## PARSONS *v.* HILL.

---

APPEALS; PRACTICE; USAGE; DISCONTINUANCE.

1. An order of the lower court vacating a writ of summons in an action at law, *reviewed,* because of the special circumstances of the case, although not appealed from, the appeal being from a subsequent order in the same case overruling a motion by the plaintiff for a judgment by default against the defendant.

2. A usage under the rules of the Supreme Court of the District of Columbia in the matter of the issuance and return of writs of summons in actions at law, which has been acquiesced in and followed for thirty-five years and has so acquired the force of established practice, will not be lightly disregarded.

3. Where in an action at law in that court a return has been made upon the writ of summons that the defendant can not be found, it is not necessary for the plaintiff, in order to keep his suit alive, to sue out successive writs of summons at intervals

of twenty days, or to enter continuances, until the defendant can be found and served.

4. A discontinuance of an action at law, in which the return upon the first writ of summons is that the defendant could not be found, will result if the plaintiff unduly delays suing out a further writ for actual service on the defendant when the latter can be found within the jurisdiction; and the defendant, upon a motion to vacate the writ actually served on him, may show by affidavits that there has been a discontinuance in consequence of the plaintiff's failure to use due diligence in causing such writ to be issued.

No. 918.  Submitted November 10, 1899.  Decided January 2, 1900.

HEARING on an appeal (specially allowed) by the plaintiff in an action at law, from an order overruling his motion for a judgment by default against the defendant.    *Remanded.*

The facts are sufficiently stated in the opinion.

*Mr. A. S. Worthington* and *Mr. Charles L. Failey* for the appellant:

1. The original summons in this case is not a common law writ.

2. The writ of summons in the court below not being a common law writ, no continuance of process could be entered upon the docket.   Continuance of process has been abolished in this jurisdiction.

3. Even if continuances of the writ of summons in this case were necessary, the entry of them was a mere matter of form, which could have been done and may now be done at any time before issue joined.  1 Tidd's Practice, 162, 678, 679; *Curlus* v. *Padly,* 1 Salk. 179; *Nickolson* v. *Rowe,* 2 Dowl. Pr. Cases, 296; 3 Chit. Pr. 218, 406.

So far, indeed, did the rule go that continuances of process were merely formal entries that it was apparently an almost universal custom not even to enter continuances of process at all unless it became necessary by reason of the defendant pleading the Statute of Limitations.  2 Arch. Pr., Bk. 4, Ch. 1, p. 172; *Harris* v. *Woolford,* 6

T. R. 617, 618; Comyn's Digest, Vol. 5, p. 58; *Beardmore* v. *Rattenburg,* 5 Barn. & Ald. 452; *Doe* v. *Dowlman,* 7 T. R. 618.

It was urged in the court below that the doctrine established by the foregoing authorities, of entering continuances at any time, is not the law in Maryland (citing *Hazelhurst* v. *Morris,* 28 Md. 72), and, therefore, the English doctrine had no application in this jurisdiction. In the first place, the English doctrine was considered up to the time that decision was rendered to be in force in Maryland; and, in the second place, whatever may have been the practice in Maryland at the time that case was decided, we must look to the common law of England for the principles which are to govern the practice in the court below of entering up continuances in an action at law, if such practice is to be considered as in use at all. Evan's Pr. 108, 109; *Galt* v. *Todd,* 5 App. D. C. 350.

While this court, in the latter case, held that continuances of a writ of execution must be regularly entered, there is a vast difference between the writ of execution and the writ of process. In the former case, if no continuance of the writ be entered, the suit is not discontinued, but a *scire facias* may issue to revive the judgment, and no right is lost by the neglect to continue the writ; while the point made by counsel for the appellee in the latter case is that there has been, by reason of a failure to enter up continuances of process, a discontinuance of the action and a complete loss of the plaintiff's right to proceed in the suit at all.

4. Even though there was a discontinuance and the English doctrine of entering continuances at any time does not apply, the defect has been cured by the general appearance of the defendant by her counsel. A motion for security for costs is a general appearance. 1 Chit. 129. A discontinuance is cured by the appearance of the party. Tidd's Pr. 679, 924.

*Mr. R. Ross Perry* and *Mr. R. Ross Perry, Jr.*, for the. appellee:

1. The orders of Cole, J., and of Bingham, C. J., were right upon principle and authority. *Hazelhurst* v. *Morris*, 28 Md. 75. There were two cardinal ideas connected with the administration of justice according to the course of the common law. The first was that a suitor had to maintain his suit, and in legal contemplation to be always present in court to urge it save when legally excused. The second was that each term's business was complete and that nothing went over to a subsequent term save by a formal continuance. 1 Tidd's Pr. 92, 93. Process was continuous from the initiate summons to the final outlawry. If at any step the original process failed, then an *alias* or a *pluries* issued, but if a gap occurred it was fatal. 3 Black. Comm. *296; Comyn's Digest, Title, Pleader, IV; *Mellor* v. *Walker*, 2 Saund. 2. Acts of Parliament were required to cure discontinuances. 32 H. VIII, Ch. 30; 4 Anne, Ch. 16. In this District certain cases and proceedings were accidentally discontinued in the old circuit court in the year 1807. An act of Congress was passed to relieve the discontinuauce. 2 Stat. 467.

2. In the old circuit court this rule as to continuances was a familiar one. *Nicholls* v. *Fearson*, 2 Cr. C. C. R. 526; *Bank* v. *Brent*, 2 Cr. C. C. R. 538; *Baker* v. *French*, 2 Cr. C. C. R. 539; *Galt* v. *Todd*, 5 App. D. C. 350. The following case in the Supreme Court of the United States is directly in point: *United States* v. *Parker*, 2 Dallas, 373. See, also, *Hazelhurst* v. *Morris*, 28 Md. 75 ; *Bank* v. *Thomas*, 35 Md. 511; *Logan* v. *State*, 39 Md. 178; *Etheridge* v. *Wordley*, 83 N. C. 11; *Penniman* v. *Daniel*, 91 N. C. 431 ; *Koonce* v. *Pelletier*, 115 N. C. 233; *Parker* v. *Grayson*, 1 N. & McC. 171; *Bank* v. *Baker*, 3 McC. 281; *Drinkard* v. *State*, 20 Ala. 13; *Curtis* v. *Gaines*, 46 Ala. 457; *Axtel* v. *Gibbs*, 52 Mich.

639; *Johnson* v. *Mead,* 58 Mich. 67; *Soulden* v. *Van Rens-salaer,* 3 Wend. 472; *Bank* v. *Haight,* 14 Wend. 83; *Delaplaine* v. *Crowninshield,* 3 Mason, 329.

3. Inability to serve process on a defendant has never been deemed an excuse for not commencing an action within the prescribed period. The plaintiff must sue out his process and take those steps which the law provides for commencing an action and keeping it alive. *Avery* v. *Washington,* 130 U. S. 320.

In Maryland the English practice of entering up fictitious continuances does not prevail. Evan's Pr. 55, 85; *Hazelhurst* v. *Morris,* 28 Md. 75. Nor does it prevail in this District. *Nicholls* v. *Fearson* and other cases cited, *supra*; *Thompson* v. *Beveridge,* 3 Mackey, 170. This last case pointedly affirms *Hazelhurst* v. *Morris, supra,* as to original process, with which we are here concerned. *Galt* v. *Todd,* 5 App. D. C. 350, does not conflict with what is there said. No rule of court can operate to change rights at common law.

Appearance of counsel for defendant and motion for security for costs in her behalf did not waive this discontinuance. Comyns' Digest, Title, Pleader, W. 4; 2 Croke, 284; *Curtis* v. *Gaines,* 46 Ala. 459; *Bank* v. *Hall,* 6 W. Va. 447.

Mr. Justice MORRIS delivered the opinion of the Court:

This cause comes here by special appeal; and the question involved in it is one of considerable importance in the practice of the law in this District under existing conditions.

On November 2, 1896, the appellant, Joseph H. Parsons, as plaintiff, instituted a suit at common law against the appellee, Alice S. Hill, as defendant, in the Supreme Court of the District of Columbia, by filing a declaration in assumpsit to recover from the appellee the sum of ten thousand dollars which he claimed to be due to him for

professional services rendered to the appellee and another person in the matter of the location of some land scrip. This claim was set forth with sufficient minuteness in a bill of particulars annexed to the declaration, which itself was in the common counts, but which, from the record before us, does not appear to have been supported by any affidavit; and, of course, no affidavit was required, except for the purpose of a summary judgment, if one should be sought. On the same day on which the declaration was . filed, a summons was issued out of the office of the clerk of the court, in the form prescribed by the rules of the court, requiring the defendant to appear in court on or before the twentieth day after service of the writ, to answer the plaintiff's suit, and to show cause why the plaintiff should not have judgment for his cause of action. This summons, with a copy of the declaration, according to the rules and practice of the court, was placed in the hands of the marshal for service, and was by him returned into the clerk's office on November 25, 1896, with the indorsement thereon that the defendant could not be found. It is understood that she was absent from the District at the time, and out of the jurisdiction.

Nothing further was done for nearly two years. On October 11, 1898, a second summons was issued; and this was served on the same day on the defendant, and was returned by the marshal into the clerk's office with the indorsement thereon: " Served copies of the declaration, notice to plead, affidavit, and this summons on the defendant this 11th day of October, 1898." This return would seem to have been incorrect in so far as it refers to an affidavit; for, as we have said, the record does not show that there was any affidavit.

The defendant came into court by attorney, and moved for a rule on the plaintiff to give security for costs as a non-resident of the District of Columbia; and the motion was supported by an affidavit showing that the plaintiff was a

resident of the State of Alabama. What action, if any, was taken on this motion, does not appear. But, about five days afterwards, on November 2, 1898, the defendant, by her attorneys, moved to vacate the second or *alias* summons issued and returned in the cause, on the ground, as alleged, " that the same was improvidently issued, since the original summons issued in the said cause was not legally and duly continued, and that therefore there has been a discontinuance of the said cause." This motion was allowed by the court, and the second or *alias* summons was accordingly vacated.

Thereupon the plaintiff, by his attorneys, moved the court to direct the clerk to enter upon the docket continuances from the date of the original summons. This motion was denied. Then the plaintiff moved for a judgment against the defendant for want of a duly verified plea. This motion also was denied. The plaintiff next moved for a judgment by default; but this motion likewise was denied.

At this stage the plaintiff sought and was allowed a special appeal to this court from the last order in the cause; and it is this special appeal that is now before us.

It is clear from this statement of the condition of the record that if we are to construe the appeal strictly as going only to the refusal of the court below to render a judgment by default upon the plaintiff's motion, the appeal can not be sustained. When the writ of summons served upon the defendant had been vacated, there was no requirement in force for the defendant to appear and answer; and when there was no obligation to answer, there could not have been default. Consequently, after vacating the summons, the trial court would have committed plain error if it had directed a judgment by default against the defendant. The error, if any there was, consisted in the order to vacate the second, or what is called the *alias* summons in the case, or else in the refusal of the court to direct the entry of

continuances as preliminary to the issue of a second or *alias* writ. And it was from either one or both of these orders that the appeal should have been sought.

Yet, under the special circumstances of the present case, it does not seem to us that the ends of justice or any good purpose would be subserved by our refusal in this appeal to consider the true and substantial question in controversy between the parties. For that question must necessarily be considered by us sooner or later. Either the action of the court below is a finality or it is not a finality. If it is a finality and it has therefore disposed absolutely of the whole case, the plaintiff is entitled to appeal as a matter of right, and we should regard the appeal as one from a final order or judgment, which opens up all the questions that were involved in the case, and that led to such final judgment. If, on the other hand, there is no final order or judgment in the case, the plaintiff, upon his being now remitted back to the trial court, would be entitled to have such final order or judgment entered, and would then be entitled to appeal therefrom to this court as matter of right, and to have the very question reviewed here which it has been sought to reach by this interlocutory appeal. We are justified, therefore, in holding that, under the special circumstances of this case, we should not decline to consider the substantial question which underlies the whole case.

That question is, whether, when a declaration in a suit at common law has been filed and a writ of summons has been issued under it in pursuance of the existing rules of the Supreme Court of the District of Columbia, and a return has been made upon that writ that the defendant can not be found, either by reason of absence from the jurisdiction or for some other cause, and no further proceeding is had in the case, no further writs issued and no continuances entered, until nearly two years afterwards, when a second or *alias* writ of summons is issued and actually served upon the defendant, the suit has become abated or discontinued, and

the plaintiff is compelled to have recourse to a new suit, if he would further prosecute his cause of action?

Counsel in this case, with admirable ingenuity and incisive logic, have gone to the very foundations of the common law on the subject of writs, and of continuances, and especially of proceedings under the old original writ, wherewith, under the ancient English practice, suits in the Court of Common Pleas were always begun. The argument on the one side is, that the continuity of proceedings required by the common law practice demands that every writ should be promptly followed up by other writs, until the purpose of the first writ is finally accomplished; and that, if a pending cause in court is postponed from one time to another, the formal postponement, or continuance, as it is called, must be entered of record, so as that the record may show that the defendant has not been dismissed from court by the failure of the plaintiff to prosecute his cause. On the other side, it is here argued that no entry of continuances was required in the present case; and that if such entry was necessary or proper, it could be done at any time as mere matter of form, whenever it became desirable to make the proceeding effective. This latter is the theory of the appellant, and the theory upon which he proceeded in the court below.

We do not think that it is necessary to follow counsel very far in their discussion of the practice under the old common law. The original writ, by which all civil suits in the Court of Common Pleas in England were formerly commenced, with its incidents of summons, attachment, *distringas*, distress infinite, and outlawry, was never in force in this country, either during the colonial period or since our Declaration of Independence. While our ancestors brought with them from England not only the substantive law of that country, so far as it was suited to their circumstances, but also their law of civil procedure, there was never any place in our system for the original writ. From

the very beginning we proceeded upon a radically different theory of jurisprudence in that regard. In England, the sovereign was the source of all authority, and the courts were his courts, and had no right to proceed in any cause without his authority and permission. It was the principal function of the original writ to give that permission. With us, on the contrary, the judicial power has always in fact been an independent co-ordinate branch of government; and the Constitutions adopted after the Declaration of Independence only recognized and emphasized that fact. It never required any special license or authority from any executive, by way of original writ or otherwise, to exercise its functions. The proceedings in England under the original writ are, therefore, no safe criterion for us in our practice.

In our practice, a simple writ of summons, or a *capias ad respondendum*, a form of proceeding derived to us from the English King's Bench, was the usual mode for the commencement of suits; and these two, which were in form executive, and not judicial writs, although actually issued by the courts, took the place of the old original writ. But in neither practice was it sought to have, or was it supposed that there could properly be, any pleadings whatever, until both parties, the defendant as well as the plaintiff, were in court; and the plaintiff's cause of action, although in the summons or *capias*, and in a memorandum or *præcipe* given to the clerk of the court as the preliminary to the issue of the process, it was to a certain extent indicated, was never formerly stated in the shape of a declaration until after the appearance of the defendant in court in response to the summons or *capais*.

But a very radical departure from ancient usage, and from the former usage of our own jurisdiction, was effected, when, by the Act of Congress of March 3, 1863, Chap. 91 (12 Stat. 762), the Supreme Court of the District of Columbia was established, with power given to it in the act of its

creation "to establish such rules as it might deem necessary
for the regulation of the practice of the several courts
organized by the act, and from time to time to revise and
alter such rules;" and when, soon after its organization, it
accordingly promulgated new rules of pleading and prac-
tice to be observed in the conduct of legal proceedings
thereafter to be instituted in that court. The radical char-
acter of these rules with reference to the antecedent prac-
tice is well recognized by counsel in the statement advanced
in argument, that if their validity had been properly tested
in due time after their promulgation, they would not have
stood the ordeal of judicial scrutiny. But this argument
is not further insisted on than in the point made in the
brief of counsel for the appellee, that rules of court can not
be permitted to contravene common right. With reference
to this, however, it is sufficient to say here that ordinarily
there can be no such thing as a common right in the reten-
tion of existing rules of pleading and practice. Courts
have made these, and courts may unmake them, especially
under legislative authority given for the purpose. Altera-
tions in the code of civil procedure must be assumed to
have been made, as they are no doubt always intended to
be made, for the better administration of the substantive
law, and not to impair individual right. Certainly the
change in the civil procedure of the District of Columbia
effected by the promulgation of the rules of the Supreme
Court of the District in 1863, being in line with the general
modification of the ancient practice before and afterwards
effected in other parts of our country, and now, it is believed,
become universal throughout the United States, can not
well be said to be antagonistic to common right, when the
common sentiment everywhere has demanded the change.

Among the rules promulgated by the Supreme Court of
the District under the authority so conferred upon it, and
which, with some modifications to be noticed, have remained
in force to this day, are three or four that are of special

importance in connection with our present inquiry. One of these provided that suits at common law should be commenced by the filing of a declaration, of which simplified forms were given; another, that to every declaration there should be appended a notice to the defendant in a certain form requiring him to plead, and that no further or other notice to plead should be required; a third, that the writ to compel the defendant's appearance should be a summons, whereof the form also was provided; a fourth, that the writ of summons requiring the defendant's appearance should be accompanied with a copy of the declaration, of the annexed affidavit, if any, and of the notice to plead subscribed to the declaration; and a fifth, to the effect that the writ of summons and these copies should be served by the marshal on the defendant, and return thereof should be duly made into the clerk's office.

The notice to plead, provided by these rules, was to the effect that the defendant should plead on or before the first day of the first special term of the court occurring twenty days after the service; and if he failed to do so, judgment would be entered against him. The summons followed substantially the form of the notice to plead, and required the defendant to appear in court on the first day of the first special term occurring twenty days after service of the writ, and to show cause why the plaintiff should not have judgment in pursuance of his declaration. And every month was created a special term for the purposes of these writs.

By virtue of these provisions, as it will be seen, the matter of appearance by the defendant as a distinct proceeding was abolished; and thereafter the appearance of the defendant, as required by the former practice, was merged in the plea or answer required from him to the declaration.

Subsequently, in the year 1894, there having been several intervening revisions of the rules not necessary here to be more particularly noticed, there was a further change in

the matter of the form of the notice to plead and of the summons to the defendant, a change made, it is believed, in response to a general desire on the part of the members of the bar, and one which has quite an important bearing on the question now under consideration. The expression, —"the first day of the first special term occurring twenty days after service hereof,"—which appeared both in the notice to plead and in the summons, while intelligible enough to the practitioner at the bar, was found by experience to be confusing to the ordinary litigant brought into court to answer a suit, who knew nothing of special terms, and was often the source of great uncertainty and annoyance. So, in a new revision of the rules promulgated in 1894, and which is understood to be yet in force, both the notice to plead and the summons were made to read so as to require the defendant to appear and answer within twenty days after service of the summons, without reference to any special terms, or to any terms whatever of the court; and the expression "special term," and the thing designated by it, seem thereafter to have disappeared from the book of rules and from the practice of the court.

Under these rules, as thus modified, it has become the settled practice for the marshal to make return of all writs of summons placed in his hands for service at or before the expiration of twenty days. If he makes actual service of the writ, he returns it forthwith with the indorsement that he has so served it. If the defendant can not be found, the marshal holds the writ for twenty days and then returns it into the clerk's office, with the indorsement thereon that the defendant is "not to be found." In either case the writ by the return becomes *functus officio*. In the event that it has not been served, it can not be taken out again for actual service—a new or *alias* writ must be resorted to for that purpose. Now, the question is presented whether, under the rules of the Supreme Court of the District of Columbia, as they now exist and as they existed when the present

proceedings were instituted, in order to keep a suit alive and to prevent a discontinuance, successive writs of summons without intermission must be issued until actual service is had upon the defendant, each successive writ to bear teste and to be issued on the date of the return of its predecessor into the office of the clerk of the court.

It is not apparent to us what good purpose is to be subserved by the continuous and uninterrupted issue of writs of summons in periods of twenty days, when they can not be actually served, and it is perfectly well known to the plaintiff that they can not be served, on account of the absence of the defendant from the jurisdiction or for some other sufficient cause. A rule of practice that would require such continuous issue of process might well become an intolerable burden, in consequence of the utterly useless trouble and the unnecessary costs to which parties might be put, and which would be of no possible benefit to anyone. Such process might have to be continued for years, with the result merely of incumbering the clerk's dockets and the records of the courts with entries of conspicuous inutility. When a defendant has gone out of the jurisdiction within the period allowed for suit by the Statute of Limitations, and a plaintiff thereafter has brought his suit in due time, in order to prevent the accruing of the bar of the statute, as he is undoubtedly entitled to do, there would be neither justice nor sense in requiring him to have writs constantly issued periodically until the defendant returns. The time of such return being indefinite, the result upon litigation would be prohibitory. When the plaintiff is a trustee, executor, administrator, guardian, or something of the kind, and sues in his representative or fiduciary capacity, and it is not only his right, but perhaps his duty to sue, which he may not avoid without grave responsibility, a very grave burden is placed upon him, and a very great impediment is interposed to his assertion of just right, if he is compelled at the same time to incur the penalty of

15 Ct. App.—36

indefinite and interminable costs before the defendant is actually served with process. We can not think that the law requires anything so unreasonable.

Even in the days of the original writ, when the continuity of legal proceedings was most strongly insisted on, only five additional or subsidiary writs, summons, attachment, *distringas*, distress infinite and outlawry, were required to meet the extreme demands of the then existing process. And if it be argued that only these five were required because in the nature of things they exhausted the possibilities of the ancient system of process, the fact shows at least that there was no such thing known to the common law as a requirement for the suing out of process to an indefinite and indeterminate extent. We know, too, that indefinite continuance of causes in court is not allowed—in fact, that such continuance is not allowed at all except for good cause, and that even the power of the courts to continue for good cause has been sought to be checked and limited by express provision of statute law, as by the acts of Maryland of 1718, Ch. 10; 1720, Ch. 20; 1721, Ch. 14; 1769, Ch. 23; 1787, Ch. 9; 1796, Ch. 43. Must then a system of legal procedure, avowedly intended to simplify and facilitate the administration of justice, be construed so as to impose upon parties the risk of an intolerable burden?

If the law and the rules of court are to be so construed, and the continuous issue of writs of summons is required in order to keep a suit alive and to prevent a discontinuance, it would be a greatly simpler and more appropriate thing so to modify the existing rules of practice as not to require a writ of summons to be returned by the marshal until it has been actually served, unless, as under the attachment laws, and perhaps in other special cases, such a return is required as a preliminary to other proceedings of a special nature. And it may be that in some such appropriate modification of the rules the remedy will be found for anomalous conditions such as have been developed in the present

proceedings or suggested by them as probable to occur.

Undoubtedly, as opposed to the useless incumbrance of unserved and unservable writs and the risk of liability for indefinite and unascertainable costs on the one side, there is the danger on the other side that, if suits were permitted for a long time to lie dormant by the failure to have notice given to defendants when such notice could well be given, these latter might be greatly and wrongfully prejudiced by being brought into court long after the subject matter of controversy has passed out of their minds, when perhaps witnesses are dead and testimony lost, and yet the Statute of Limitations might not be available as a defense. And by this view the Court of Appeals of Maryland seems to have been greatly influenced in the case of *Hazelhurst* v. *Morris,* 28 Md. 75, which has been pressed upon our attention as stating the true and proper practice in force both in the State of Maryland and in this District, and which seems to have been recognized as authority for that purpose, so far at all events as concerns the writ of *scire facias* for the revival of judgments, by the General Term of the Supreme Court of the District of Columbia in the case of *Crumbaugh* v. *Otterback,* 20 D. C. 434, in an elaborate opinion written for that court by Mr. Justice Cox after careful argument.

Now, that there are or may be extreme cases in which, without fault on either side, or perhaps even as the result of fraudulent purpose on the part of a plaintiff in availing himself of all the time allowed to him by law for the institution of his proceeding, a defendant has been placed in a more unfavorable position in respect of testimony or otherwise than he might perhaps have occupied if the proceeding had been more promptly instituted, may well be conceded. But this is only the unavoidable incident of the application of general rules, which may occur in any class of cases. In the view, however, which we take of the question now before us, we do not think that there is any such danger to be apprehended as the result of allowing a plaintiff to keep

his suit alive when he has done all that he is required in reason to do to render it effective.

The suing out of successive writs of summons at intervals of twenty days, each writ to bear teste as of the date of the return of its predecessor into the clerk's office by the marshal, is the only mode pointed out to us, and apparently the only mode that can be pointed out, to effect the actual continuance of process in the present case. But in the rules of the Supreme Court of the District we find no requirement for any such continuance. Those rules, in fact, are entirely silent on the subject; and we are apparently remitted to the practice of the common law. But the common law furnishes no guide, and, in our opinion, no analogy even, for the determination of such a case as the present. As we have seen, the practice under the original writ in England affords no analogy; and, as we think has been sufficiently shown, a requirement for the continuous issue of successive writs, when those writs can not be served, is unreasonable. We are advised that the usage under the rules of the Supreme Court of the District for upwards of thirty-five years, that is, practically during the whole period of its existence, has been to the reverse of the contention that a continuous issue of successive writs is necessary in order to keep a cause alive, when the first writ has been returned without actual service on the defendant; and this usage upon which we are justified in assuming that a considerable number of judgments, and perhaps also of rights of property, may depend, seems to be conceded on behalf of the appellee and by both parties to the cause. It is argued, however, that no judgments will be disturbed by a holding adverse to this usage, for the reason that all such judgments have been validated by the provisions of the Statutes of 32 Henry VIII, Ch. 30, and 4 Anne, Ch. 16, in regard to the curing of discontinuances; and that there is no reason why the question should not be raised at this time, even though it be for the first time. But, apart from

the question whether these statutes are comprehensive enough to cover all cases, which may be doubted, we are not lightly to disregard a usage, which, by virtue of long acquiescence in it, has acquired the force of established practice. Certainly, the practice has not been, when a writ of summons has been returned to the clerk's office with the indorsement that the defendant can not be found, thereupon to continue without intermission the issue of successive writs until the defendant is actually served. No case has been adduced where this was done or required to be done. On the contrary, the practice has been quite the reverse—namely, that after the return of the first writ that the defendant can not be found, no second or *alias* writ is required, until actual service can be had. And that this has been the practice, we understand to be conceded, at all events not to be denied by the appellee ; and it seems to be sufficiently established. It may be that this practice or usage is justly amenable to the criticism that it does not conform to the rigid rule of continuity and to the doctrine of continuances as applied in the old common law. But we think that the radical change in the law of procedure effected by the rules of the Supreme Court of the District had the effect of dispensing with the requirement of actual continuances in the matter of the service of original process to bring a defendant before the court, after one writ had been issued and returned without effect; and that, at the utmost, all that could reasonably be required in such a case would be the entry of fictitious continuances on the record to be made whenever a writ could be actually issued with effect, in accordance with what is understood to have been the practice of the English courts in analogous cases. The making of fictitious entries, however, is not appropriate in our American practice ; and it is understood that in the cases in which they are authorized in England, they are wholly dispensed with and are unnecessary in our legal procedure.

We are not to be understood as holding that the law in regard to continuances is not yet in force. On the contrary, we regard it as yet fully in force in many cases; and it has been so held. *Galt* v. *Todd*, 5 App. D. C. 350; *Crumbaugh* v. *Otterback*, 20 D. C. 434; *Thompson* v. *Beveridge*, 3 Mackey, 170. But, wherever it has been held that continuance is necessary, actual continuance is meant. There is no place in our system for the entry of fictitious continuances. *Nicholls* v. *Fearson*, 2 Cranch C. C. Rep. 526; *Bank* v. *Brent*, 2 Cranch C. C. Rep. 538; *Baker* v. *French*, 2 Cranch C. C. Rep. 539; *Thompson* v. *Beveridge*, 3 Mackey, 170.

But the usage, which we regard as having become a rule of practice under the code of rules promulgated by the Supreme Court of the District, has its limitations. That usage has already been stated to be, that when, upon a declaration at common law, filed in that court, a writ of summons has been issued, and has been duly returned by the marshal with the return that the defendant can not be found, no further writs are required to be issued in order to keep the suit alive, until the defendant can actually be found and a writ can actually be served upon him. But it follows that, when the defendant can be found and the writ can actually be served upon him, it then becomes necessary to follow up the proceeding by the issue of a writ to be actually served; and if the plaintiff fails to have a writ issued in due time for such actual service, he incurs the risk of having his suit discontinued. It is open to a defendant, when service of process has been improperly and unduly delayed, to show, upon a motion to vacate the writ, when it has actually been issued, that there has been discontinuance in consequence of failure to have it issued in due time. The writ will be presumed to have been duly issued and duly served, until the contrary is shown; but actual discontinuance of the suit may be made to appear, upon affidavit or otherwise to the satisfaction of the court. And when such actual discontinuance has been

made to appear, the court may properly vacate the writ which has been served upon the defendant, and discontinue the cause, and remit the plaintiff to a new action, if he chooses to avail himself of it.

We are advised that in the present case the *alias* writ of summons which was actually served upon the defendant was vacated by the court below, upon the ground that there had been no actual continuances entered in the case; that is, that there had been no actual and continuous issue of successive writs, and not because there was proof of any actual discontinuance by the plaintiff when it was open to him to have a writ issued which would be effectual to bring the defendant before the court. No proof of such actual discontinuance seems to have been offered or required; and it seems to us that, in the absence of such proof, the vacation of the writ of summons was not warranted by what was understood to be the existing practice of the court as determined by its own rules of procedure.

Suits at common law, which have been duly commenced by the filing of a declaration and the issue of process thereunder, can not thereafter be permitted to remain indefinitely within the control of the plaintiff alone. The suit should be effectively prosecuted in good faith, or dismissed. Due diligence in such prosecution is an essential requirement on the part of the plaintiff. If that due diligence is wanting, effect should be given to the rule of law that works a discontinuance of the suit. But under the code of procedure of the Supreme Court of the District, that question of due diligence is a question of fact to be shown to the court by proper proof. This was not done in the present case; and we think that it was error to vacate the writ without such proof.

The cause will be remanded to the Supreme Court of the District of Columbia, with directions to vacate or rescind the order vacating the *alias* writ of summons issued in the cause, and to vacate all the orders and proceedings had in

the cause subsequent thereto; and with directions further to permit the defendant to renew her motion to vacate said *alias* writ, if she so desires, and said motion to support by proper proof, and thereupon to take such further and other proceedings in the cause as may be in accordance with law and not inconsistent with this opinion.

Under the circumstances of this case, each party will pay his own costs on the appeal.