## MOORE–NORMAN AREA VOCATIONAL–TECHNICAL SCHOOL DISTRICT NO. 17, Petitioner,

### v.

## BOARD OF TRUSTEES OF SOUTH OKLAHOMA CITY JUNIOR COLLEGE et al., Respondents.

### No. 46872.

Supreme Court of Oklahoma.

Feb. 12, 1974.

Harold L. Heiple, Heiple Law Offices, Inc., Norman, for petitioner.

Gary M. Bush, Michael D. Tinney, Fagin, Brown & Bush, Herman Merson, Merson, Campbell & Merson, Oklahoma City, for respondent Bd. of Trustees of South Oklahoma City Junior College.

Curtis P. Harris, Dist. Atty., William L. Funk, Asst. Dist. Atty., Oklahoma City, for respondents Oklahoma County Treasurer, Oklahoma County Assessor.

J. Harry Johnson, Oklahoma City, for amicus curiae, Oklahoma State Regents for Higher Ed.

LAVENDER, Justice:

This is an original action by petitioner, the Moore-Norman Area Vocational-Technical School District No. 17, a body corporate duly formed as an area vocational-technical school district, the boundaries of which are partly within the boundaries of

the South Oklahoma City Area School District, the "overlap" area being entirely within Oklahoma County.

Petitioner asks that we assume original jurisdiction, enjoin the Oklahoma County Treasurer from the distribution of certain tax monies from the overlap area to the South Oklahoma City Junior College, and to judicially determine rights relative to tax revenues and incurrence of indebtedness in the overlap area by its area school district and the South Oklahoma City Area School District, which district it does not recognize as an area school district.

Original jurisdiction is assumed.

The South Oklahoma City Junior College offers courses in vocational and/or technical education, and, because of this, pursuant to 70 O.S.1971, § 4410, a tax levy of 5 mills as provided for by Section 9B(a), Article X, Oklahoma Constitution, upon proper vote thereon by the people, was levied within the South Oklahoma City Area School District. Similarly, a 5 mill tax levy is authorized the petitioner in its area school district by the same Article, and a 5 mill tax levy was voted by the people in that district, it being the second of the two levies impressed upon the taxable property in the overlap area. Both levies are for operational funds.

The County Treasurer has paid, and proposes to pay, to the Board of Trustees of the college monies derived from the 5 mill tax levy for the South Oklahoma City Area School District. Petitioner seeks a judicial determination that this 5 mill tax levy is void, or, in the alternative, that it is entitled to share equitably in the monies thereby generated. Our holding is that the levy is not void, and we find no authorization for the equitable sharing.

Petitioner also seeks a judicial determination that the issuance of general obligation bonds by the college for capital improvements shall not prevent petitioner from issuing its own general obligation bonds for up to 5% of the net valuation of taxable property within its area school district, which would include the overlap area,

in accordance with Section 9B(b), Article X, Oklahoma Constitution. Our conclusion on this will be stated hereinafter.

The referenced Section 9B, Article X, came into being in its entirety by constitutional amendment proposed by the Legislature and voted on by the people in a special election in 1966.

The petitioner vocational-technical school district came into being in 1972 pursuant to provisions of 70 O.S.1971, § 14-108, pertaining to area school districts, and providing, among other things, for the State Board of Vocational and Technical Education to prescribe criteria and procedures for such school districts and the government thereof, as provided by Section 9B, Article X, Oklahoma Constitution.

The South Oklahoma City Area School District came into being in 1970 pursuant to provisions of 70 O.S.1971, § 4410 as enacted in 1968. That section provides substantially in part that a community maintaining a community junior college in which courses in vocational and/or technical education are offered, and meeting the published standards prescribed by law and/or the State Board for Vocational Education [predecessor to the State Board of Vocational and Technical Education] for establishing an area school district may, by resolution adopted by the Board of Trustees of the college, become an area school district, and laws applicable to other area school districts, including laws authorizing tax levies, are applicable to such district.

Petitioner attacks this statute, 70 O.S. 1971, § 4410, and says that under the state constitution, only the State Board for Vocational Education can establish area school districts, the statute, in petitioner's view, being unconstitutional and void insofar as it purports to authorize anyone other than the board to establish area school districts. This is its Proposition II. Incorporated therein is petitioner's further position that a statutory proclamation that junior college communities can grant unto themselves the ability to become area schools [area school districts] authorized

to collect ad valorem tax money is simply an attempt to grant by legislative fiat powers which the legislature is not authorized to grant under the state constitution. Petitioner says that the board had nothing to do with the qualification of the community or the college for establishing an area school district, and that therefore neither exists as an area school district, and neither can collect monies generated by levies impressed on property located within its boundaries. The basis for this position lies in Section 9B(c), Article X of the Constitution, which is as follows:

"(c) Until otherwise provided by law, area school districts and the government thereof shall be established in accordance with criteria and procedures prescribed by the State Board for Vocational Education."

Petitioner also refers to the ballot title for the aforesaid Section 9B, Article X Amendment, adopted at the election held in 1966, which provides in its GIST OF THE PROPOSITION for

". . . authorizing establishment of area school districts by the State Board for Vocational Education; . . ."

as further evidence of the exclusive authority of the board to establish area school districts.

Petitioner's Proposition I is that the Legislature may not alter, amend, delete or add to the provisions of Section 9B, Article X, Oklahoma Constitution notwithstanding sub-section (d) thereof which reads:

"(d) The Legislature may alter, amend, delete, or add to this Section 9B by law.
* * *"

because no reference to this was in the ballot title and, hence, the people did not approve such amendment of their constitution, as is their right under Section 1, Article V, of that constitution. However, since our disposition of the matter turns on sub-section (c) of the referenced Section 9B, and, also, on the adequacy of the ballot title in advising the voters of what they were to vote on, other than subsection (d),

it is not necessary to decide the matter raised in petitioner's Proposition I.

 In reference to the ballot title, the above quoted clause from it is what it says—an authorization to the State Board for Vocational Education. Nowhere does the constitutional amendment, Section 9B, or its ballot title, stamp the board as a creation of the constitution. It was, and remained, a creation of the Legislature, and the ballot title reference to the board must be viewed in that light. Left undisturbed was all legislative power regarding the board, and this power included alternate means for accomplishing anything that the board might accomplish. Therefore, fairly within the GIST of the ballot title was Section 9B(c) providing for area school districts and their government in accordance with criteria and procedures provided by the board "until otherwise provided by law," the quoted provision being a recognition of the legislative power found in Section 36, Article V, Oklahoma Constitution, providing that any specific grant of authority in the Constitution shall not work a restriction, limitation, or exclusion upon the authority of the Legislature upon the same subject or any other subject. The Legislature thereafter provided for an alternate means of establishing an area school district by enacting 70 O.S. § 4410 in 1968, and this was within its authority as a rightful subject of legislation. Further, we observe that the ballot title insofar as it pertains to Section 9B, exclusive of sub-section (d) on which we express no opinion as it is not necessary for this decision, adequately advised the voters of the general nature of the measure (Perry v. Jordan (1949), 34 Cal.2d 87, 207 P.2d 47, 51), which, other than the statement of the board's authority, supra, permitted the levying of taxes and incurring of indebtedness by area school districts upon vote of the people therein. Also, the proposed amendment and its ballot title were in accord with the requirements of Section 1, Article XXIV, of the state constitution pertaining to amendments proposed by the Legislature. All of this being so, as we

believe it is, the action of the Legislature in thereafter enacting what is now 70 O. S.1971, § 4410 was in no-wise manifestly in contravention of the constitution (Rupe v. Shaw (1955), Okl., 286 P.2d 1094, 1098) and should be therefore upheld; the community maintaining the junior college could become an area school district, and the voters of that district could levy a tax in accordance with Section 9B(a), Article X of the state constitution. Further, payment of monies generated by such tax levy could properly be paid by the County Treasurer to the governing board for the area school district, which, as we noted in Sherrill v. Board of Trustees of South Oklahoma City Junior College (1973), Okl., 515 P.2d 1388, is also the Board of Trustees of the community junior college.

This subject would not be complete without recognition of the position of the County Treasurer and County Assessor that the taxpayers of the overlap area cannot be subjected to two 5 mill assessments because of provisions of Section 9B, Article X of the state constitution. No collection or payment of the millage levied by the petitioner's district is intended by them. Closely allied to this matter is petitioner's request for a determination that issuance of general obligation bonds by the college shall not prohibit the petitioner from issuing its own general obligation bonds for up to 5% of the net valuation of taxable property within petitioner's area school district, including the overlap area, in accordance with Section 9B(b) of the aforesaid Article. The matters are allied because inhabitants of the overlap district would be paying taxes in each instance for support of two area school districts.

First, it may be noted that nothing in Section 9B, Article X of the constitution, specifically or by reference to other sections of that Article, prohibits either the issuance of general obligation bonds, or the imposition of a 5 mill tax levy by the voters of any area school district, which necessarily includes both area school districts. The matter does not end there, however, for we must ask ourselves whether it was the intent of the voters in voting upon the constitutional amendment, and, indeed, whether it was the intent of the Legislature in enacting 70 O.S.1971, § 4410, that the authority thus extended to area school districts encompassed an overlap area in which the authority was already utilized to the maximum permissible extent by another area school district. Our conclusion is that there was not such intent in either instance, and we reach this result by construction of the referenced Section 9B, Article X, which authorizes the mill tax levies and indebtednesses by area school districts.

■ The object of construction, applied to a constitution, is to give effect to the intent of its framers and of the people adopting it. This intent is to be found in the instrument itself; and when the text of a constitutional provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument. Latting v. Cordell (1946), 197 Okl. 369, 172 P.2d 397, quoted in Hines v. Winters (1957), Okl., 320 P.2d 1114, 1118. Therefore, looking directly to Section 9B(a), it first provides that:

"Area school districts for vocational and/or technical schools may be established and a levy of not to exceed five (5) mills on the dollar valuation of the taxable property in any area school district so established may be made annually, for the district, when such levy is approved by a majority of the electors in the area school district, . . ."

It is most difficult to believe that the Legislature in proposing this amendment, or the people in voting on it, had any thought of overlapping districts for the teaching of the same subject, and it being immaterial for this purpose whether the teaching was at a secondary school or higher school level. Indeed, that would have been beyond the gist of the proposition voted on, and, if held otherwise, the desirability of an informed electorate passing on changes in the fundamental law (16

Am.Jur.2d, Constitutional Law, Section 36) would be circumvented.

■ Accordingly, we hold that Section 9B, Article X, Oklahoma Constitution, does not contemplate the imposition of a tax levy upon the taxable property in the overlap area of the two area school districts in excess of that authorized for a single school district. The maximum taxable levy for operational purposes having already been imposed for benefit of the South Oklahoma City Area School District, there was no authority for an additional levy in the overlap area for operational purposes to benefit petitioner's area school district, and to the extent the levy for petitioner's district did so, the same is invalid. This is consistent with the requirement that taxes must be uniform upon the same class of subjects, as found in Section 5, Article X, Oklahoma Constitution. Moreover, while not necessary to decide this tax levy matter, the voters, in voting on the constitutional amendment, and the Legislature in enacting 70 O.S.1971, § 4410, could not have intended that area school districts could be superimposed one on top of the other as was done in this case, so that even if the permissible tax levy upon taxable property in the overlap area were not already imposed, only the area school district first created would be authorized to impose such levy. We say this without going outside of the referenced Section 9B(a) of the Constitution with the same reasoning as aforesaid in commenting on intent with regard to that section.

■ Turning to the matter of petitioner issuing general obligation bonds, Section 9B(b) provides that:

"(b) Upon the establishment of area school districts, such districts are autho-rized to become indebted separate and apart from the indebtedness of any school district included in the area school district up to five percent (5%) of the net valuation of taxable property within such area school district for capital improvements . . ."

In view of the reference to indebtedness separate from that of any school district, surely, had the Legislature in proposing the amendment intended that the authorized indebtedness also be separate from that of any overlapping area school district, it would have likewise so stated in both the amendment and its ballot title. Therefore, the same principle prohibiting the imposition of dual tax levies in an overlap area is applicable to the matter of general obligation bonded indebtedness. The South Oklahoma City Area School District having been first established, it has the sole right of such a district to its geographical area for the purpose of voting bonded indebtedness therein.[1]

The foregoing, we think, meets the required objective of giving effect to the intent of the legislative framers of the constitutional amendment concerned, and of the people adopting it. State ex rel. Hawkins v. Oklahoma Tax Commission (1969), Okl., 462 P.2d 536.

The rights of the parties have been determined, and the request for an order enjoining the Oklahoma County Treasurer from distributing tax monies derived from the overlap area to the governing board of the South Oklahoma City Area School District [referred to by petition as the South Oklahoma City Junior College] is denied.

All Justices concur.

---

1. The county officials state in their answer to petitioner that the bonded indebtedness of the South Oklahoma City Junior College [not the South Oklahoma City Area School District] is being retired by a levy of 5.96 mills on taxable property in the county, which in-cludes the overlap area. As thus stated, this is a matter separate from indebtedness of the area school district, which is a separate and distinct entity from the college. Sherrill v. Board of Trustees of South Oklahoma City Junior College, supra.