In the Matter of the PROTEST OF the 1990–1991 BUDGET OF VO–TECH # 22, METRO TECH.

Representatives Kevin HUTCHCROFT, Alice Musser; Bill Paulk; Wanda Jo Peltier; et al.; and South Oklahoma City Area School District, Appellants/Tax Protesters,

v.

METRO AREA VOCATIONAL–TECHNICAL SCHOOL DISTRICT NO. 22, Operating as Metro Tech; Warren Gardner, President, Board of Education; Del Hamm, Clerk, Board of Education; Oklahoma County Excise Board; Ralph Hess, County Clerk; George Keyes, County Assessor; and Joe Barnes, County Treasurer, Appellees/Respondents.

No. 77344.

Court of Appeals of Oklahoma, Division No. 1.

July 28, 1992.

Certiorari Denied Jan. 21, 1993.

William F. Gorden, Jr., Oklahoma City, for appellants/Tax Protesters.

Bob Macy, Dist. Atty., Hugh A. Manning, Asst. Dist. Atty., Oklahoma City, for appellees, Oklahoma County Excise Bd., Ralph Hess, County Clerk, George Keyes, County Assessor, and Joe Barnes, County Treasurer.

Lana Tyree, Phillis L. Walta, Oklahoma City, for appellee, Metro Tech.

## MEMORANDUM OPINION

JONES, Judge:

Appellants Tax Protesters (Protesters) seek review of an order of the Court of Tax Review (Tax Court) overruling protest and approving budget.

### FACTS

At trial, all parties agreed to the following pertinent facts. The South Oklahoma City Area School District is a vocational-technical school district which provides vocational and technical education programs to post secondary students as prescribed by the State Board of Vocational–Technical Education. This district was created in 1970 by resolution of the Board of Trustees of South Oklahoma City Junior College (now Oklahoma City Community College) pursuant to 70 O.S.1968 Supp. § 4410. Metro Area Vocational Technical School District No. 22, (Metro Tech) is a vocational-technical school district which provides vocational and technical education programs to secondary, post secondary, and adult students also as prescribed by the State Board of Vocational–Technical Education. Its boundaries are coterminous with the boundaries of the Oklahoma City School District, and a portion of the defined boundaries of Metro Tech overlap a portion of the pre-existing boundaries of South Oklahoma City Area School District. The area of overlap of the two school districts is located in Oklahoma County.

Pursuant to separate elections authorized by Article X, Section 9B(A) of the Oklahoma Constitution, the voters of both South Oklahoma City Area School District and Metro Tech District approved five mill operational levies at different times for the purpose of providing funds to operate each district and these operational levies continue in effect on an annual basis until repealed by the voters of each respective district. These operational levies are not at issue in the present case. However, on April 10, 1990, the qualified voters of the Metro Tech District, *including a majority of the voters in the overlap area* approved the imposition of a five mill *incentive* levy on all the taxable property within its boundaries. This incentive levy must be approved each time it is requested, and it can only be authorized for one fiscal year at a time. County officials have certified the 5 mill incentive levy on all taxpayers within the limits of Metro Tech District, including those in the overlap area. The Budget of Metro Tech District for 1990–1991 was filed with the State Auditor and Inspector on September 14, 1990, requesting a 5 mill incentive levy for its entire district, including the overlapping boundary area. The protest in Tax Court was filed on September 17, 1990, questioning the legality of the incentive levy.

▇ Protesters assert as their first proposition of error that the Tax Court erred in interpreting and applying case law, citing *Moore–Norman Area Vocational–Technical School District v. Board of Trustees*, 519 P.2d 497 (Okl.1974), as controlling. Protesters maintain that *Moore–Norman* stands for the proposition that in an area of overlap, only the first school district created would have the authority to impose a levy. We do not read *Moore–Norman* as so restrictive, and neither did the Court below.

*Moore–Norman* dealt with an operational levy, which remains in effect until repealed by a vote of the people. The present case pertains to an *incentive* levy, which must be re-approved yearly by the registered voters of the school district. In *Moore–Norman*, the "overlap" area was being double taxed by the two different school districts and the Oklahoma Supreme

Court ruled that Okla. Const. Art. X, § 9B does not contemplate the imposition of a tax levy in the overlap area of two area school districts in excess of that authorized for a single school district. *Moore–Norman*, 519 P.2d at 502.

Since *Moore–Norman* was decided in 1974, the Metro Tech School District has been created and Art. X, § 9B has been amended to authorize incentive levies. At present, only the Metro Tech School District has implemented the 5 mill incentive levy and the citizens of the "overlap" area are not subject to double taxation. South Oklahoma City area School District has not yet passed an incentive levy and therefore the issue of uniformity of taxes, Okla. Const. Art. X, § 5, is not before us. Protesters present no other authority in support of their position and we affirm the trial court on this point.

Protesters next argue that the legislative history of Art. X, § 9B shows the intent of the Legislature to allow overlapping area school districts for taxation purposes only where one district is entirely subsumed by another. This proposition of error is without merit for the following reasons.

Both sides have thoroughly briefed the extensive changes in the amendment in question, from its inception to the present. On May 24, 1966, Article X, Section 9B of the Oklahoma Constitution was created and adopted by a vote of the people on State Question No. 434. The original amendment authorized school districts to establish a 5 mill "operational" levy which continues in perpetuity until specifically repealed by a vote of the people in the district, as authorized by subsection (d) thereof. In 1984, the State Legislature amended Art. X, § 9B to authorize a 5 mill "incentive" levy in addition to other levies previously authorized:

B. *In addition to any other levies* authorized by this section, an area school district may make a local *incentive* levy for the benefit of the area school district in an amount not to exceed five (5) mills

on the dollar valuation of the taxable property in the area school district when approved by a majority of those registered voters of the area school district voting on the question at an election called for that purpose. Any funds generated pursuant to the provisions of this subsection shall not be charged against state appropriated funds.[1] (Emphasis added.)

We confine our review to the amendments in effect on April 10, 1990, the date the voters of Metro Tech District voted the imposition of a 5 mill incentive levy.

■ There appears to be no Oklahoma Supreme Court case specifically construing the revised provisions of § 9B. Generally the object of construction, applied to a constitution, is to give effect to the intent of its framers and of the people adopting it. This intent is to be found in the instrument itself, and when the text of a constitutional provision is not ambiguous, the courts, in giving construction thereto are not at liberty to search for its meaning beyond its instrument. *Draper v. State*, 621 P.2d 1142 (Okl.1980). There is no room for construction or provision for further inquiry when the Constitution plainly speaks. A constitutional amendment should be construed in consideration of its purpose and be given a practical interpretation to carry out the plainly manifested purpose of the people who adopted it. *Smith ex rel., State v. State Bd. of Equalization*, 630 P.2d 1264, 1267 (Okl.1981).

■ On review of the pertinent part of Art. X, § 9B, here under construction, and applying this rationale, we find no language or indication that would warrant reversal of the Tax Court. The Legislature clearly intended to authorize an "incentive" levy in addition to other levies when approved by the voters in a school area. There are no stated exceptions. We refuse to restrict the clear intent of the Legislature and we refuse to find an interpretation

---

**1.** Laws 1984, Chapter 63, Section 1, amending Article 10, Section 9B of the Oklahoma Constitu- tion, effective March 29, 1984.

as advocated by Protesters in their second proposition of error.

 Further, we are cognizant of attempts by the Legislature to clarify or amend Art. X, § 9B, pending litigation of the present action. Legislative intent cannot be determined from extrinsic aids when the statute speaks plainly and the statute's meaning must be accepted. *Mindemann v. Ind. School Dist. No. 6 of Caddo County*, 771 P.2d 996, (Okl.1989); *Humphrey v. Denney*, 757 P.2d 833, 835 (Okl.1988); *Ind. School Dist. v. Okl. City Fed. of Teachers*, 612 P.2d 719, 723 (Okl.1980). A subsequent Legislature has no authority to place a legislative construction upon an existing legislative act:

> If it was intended solely as a legislative construction of a previous existing statute, then it is of no effect whatever. A subsequent Legislature has no authority to construe an existing statute enacted by a previous Legislature and make such construction binding upon the judiciary.

*Board of Comm'rs of Cherokee Co. v. Hatfield*, 121 Okl. 28, 247 P. 77 (1926).

> The Legislature has no power to direct the judiciary in the interpretation of existing statutes. The legislative intent that controls in the construction of a statute has reference to the Legislature which enacted the act.

*Stephens Produce Co. v. Stephens*, 332 P.2d 674 (Okl.1958).

We therefore do not accept protesters attempt to establish the meaning of the prior Art. X, § 9B by reference to later amendments in an argument that states the Legislature was merely clarifying its original intent by passing later, more restrictive provisions.

AFFIRMED.

ADAMS, P.J., and GARRETT, J., concur.