**ETHICS COMMISSION OF the STATE OF OKLAHOMA, Petitioner,**

v.

**Robert V. CULLISON, President Pro Tempore of the Oklahoma Senate and Glen D. Johnson, Speaker of the Oklahoma House of Representatives, as Representatives of the Oklahoma Legislature, Respondents.**

No. 79903.

Supreme Court of Oklahoma.

March 30, 1993.

Clyde Muchmore, Harvey D. Ellis, Jr., Rebecca L. Adams, Oklahoma City, for petitioner Ethics Com'n of the State.

Burck Bailey, George F. Short, Cynthia L. Sparling, Dino E. Viera, Maribob L. Hammett, Oklahoma City, for respondents Robert V. Cullison and Glen D. Johnson.

Darryl F. Roberts, pro se.

Neal Leader, Asst. Atty. Gen., Oklahoma City, for amicus curiae Oklahoma Atty. Gen.

Richard C. Ogden, Joel L. Carson, Earnest Istook. Jr., Oklahoma City, Gary Gardenhire, Stanley M. Ward, Norman, for amici curiae.

SUMMERS, Justice.

In September of 1990 the people of Oklahoma voted to adopt a new Article to the State Constitution by way of Initiative Petition No. 341 and State Question No. 627. Thus Article 29 came into existence as a framework for a fresh scheme of ethical standards to be administered by a constitutionally created Ethics Commission. The Ethics Commission of the State of Oklahoma petitions this Court to assume original jurisdiction and issue a declaratory judgment. It seeks a ruling that House Joint Resolution 1077 of the Second Regular Session of the Forty–Third Legislature is unconstitutional in large part. H.J.R. 1077 contains 49 sections, and the Commission argues that sections 2–49 inclusive are contrary to the new Article 29. H.J.R. 1077, 1992 Okla.Sess.Laws 2207–2270.

In 1991 the Ethics Commission performed its constitutionally required duty, and promulgated rules governing the ethical conduct of certain public officials and employees. The Legislature in its 1992 session "disapproved" those rules, and the Commission does not question the validity of that disapproval. But the Legislature also enacted comprehensive statutory provisions governing the same subject matter as in the disapproved Commission's rules. The Commission argues that the Legislature usurped the function of the Commission by unilaterally creating the Legislature's own version of ethics rules in the form of statutes. The Commission also raises constitutional objections to the substance of several of the enactments as well

as to the funding of the Commission by the Legislature.

The Respondents, Robert V. Cullison and Glen D. Johnson, are sued in their official capacities as President Pro Tempore of the Oklahoma Senate and Speaker of the Oklahoma House of Representatives. They contend that the Court should not, and cannot, assume original jurisdiction to decide the controversy. They also contend that the Legislature possesses the authority to disapprove of rules of the Ethics Commission, adopt ethics rules in the form of statutes, and thereby bypass Ethics Commission rulemaking-authority. State Senator Darryl F. Roberts filed a petition to intervene. He argues that this case should be dismissed upon the ground that the Legislature and its members are immune from suit, and that the court is without jurisdiction to decide the controversy. Certain Legislators appear as *amici curiae.* They are Ernest J. Istook, Jr., Frank Davis, Wanda Jo Peltier, Charles Key, Larry Hansen, Robert Worthen, Joan Greenwood, Grover Campbell, Bill Graves, Ed Apple, Tim Pope, Carolyn Coleman, Elmer Maddux, Charles Ford, Mike Fair, Helen Cole, Howard Hendrick, Mark Synder, Don Rubottom, Tony Caldwell, and Leonard Sullivan. They argue in support of the Commission that H.J.R. 1077 is unconstitutional. *Amici curiae* Common Cause of Oklahoma, League of Women Voters, Consumer Watch Committee of Oklahoma, Inc., Oklahomans for Integrity in Government, and Mexican American Political Association de Oklahoma also appear in support of the Commission that the Resolution is unconstitutional. Attorney General Susan B. Loving appears as *amicus curiae* and urges that the Court does not have jurisdiction.

The Commission attempts to invoke our original jurisdiction pursuant to Okla. Const. Art. 7 § 4 on the basis of this court's superintending control jurisdiction,[1] on the doctrine of *publici juris,* and upon the circumstances of this dispute as being one between two powers of State government, each imbued with constitutionally vested authority. We find that the case before us presents one of those *rare* circumstances where this Court should grant a form of declaratory relief. We assume original jurisdiction in part, grant the request for declaratory relief in part, and decline to assume jurisdiction in part.

## I.

██ The usual remedies employed by this Court in exercising superintending control are the constitutionally specified writs of mandamus, prohibition, certiorari, habeas corpus, and quo warranto. Okla. Const. Art. 7 § 4; *Butler v. Breckinridge,* 442 P.2d 313, 318 (Okl.1967); *Board of Commissioners of Harmon County v. Keen,* 194 Okl. 593, 153 P.2d 483, 485 (1944). The Commission stated at oral argument that none of the constitutionally listed writs are proper for this controversy, and requested a declaratory judgment. The Oklahoma Declaratory Judgments Act, 12 O.S.1991 § 1651–1657, provides no remedy to the Commission, as that Act expressly pertains to proceedings brought in the District Court. 12 O.S.1991 § 1651.

██ The argument that this Court can not exercise jurisdiction, and that the Commission has no legal right to vindicate, all because there is no common law remedy[2]

---

**1.** Okla. Const. Art. 7 § 4 provides in part: "The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all Agencies, Commissions and Boards created by law."

**2.** English common law did provide writs of prevention for the resolution of particular controversies prior to actual injury as occurs in the contemporary declaratory judgment. *See* 1 W. Anderson, *Actions for Declaratory Judgments,* 1–2 (2d ed. 1951); *Black's Law Dictionary,* 238 (4th ed. 1951), (defining *brevia anticipantia,* i.e., preventative writs). *See also Automotive Equip. v.*

*Trico Prod. Corp.,* 11 F.Supp. 292, 294 (W.D.N.Y. 1935), (origin of declaratory judgments in courts of equity). We note that the equitable remedy of a bill *quia timet* was also labeled as a "preventative writ" by some courts. *De Carli v. O'Brien,* 150 Or. 35, 41 P.2d 411, 416 (1935); *Roman Catholic Archbishop v. Shipman,* 69 Cal. 586, 11 P. 343, 344 (1886); *Peters v. Linenschmidt,* 58 Mo. 464, 466 (1874). *Quia timet* has been described as analogous to a declaratory judgment. *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 300, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943). The lack of an historically recognized English common law remedy for

for this particular controversy finds some support in common law prior to 1848, but it has no place in contemporary jurisprudence. Although Bracton argued as early as the thirteenth century that a remedy should exist for every wrong, the common law's system of particular writs and forms of action resulted in the legal remedy defining both the jurisdiction of the court and the rights of the parties in a particular case. *See* T. Plucknett, *A Concise History of the Common Law*, 354 (5th ed. 1956); J. Koffler and A. Reppy, *Handbook of Common Law Pleading*, 64 (1969). But forms of action have long been abolished in this State,[3] and our fundamental law indicates that judicially cognizable wrongs are not defined by particular remedies. Okla. Const. Art. 2 § 6.[4] Consistent with this authority we have explained that this court's superintending control is not limited to the constitutionally specified writs of Okla. Const. Art. 7 § 4. *Board of Commissioners of Harmon County v. Keen*, 194 Okl. 593, 153 P.2d 483, 485 (1944). *See also State ex rel. Lemke v. District Court of Stutsman County*, 49 N.D. 27, 186 N.W. 381, 386 (1921); *Attorney General v. Railroad Companies*, 35 Wis. 425, 515 (1874). Similarly, the question of whether a court should grant declaratory relief is not a question of the power or jurisdiction of the court to grant the relief, but the appropriateness of that particular procedure or remedy for the particular justiciable controversy. *Conoco, Inc. v. State Depart. of Health*, 651 P.2d 125, 131 (Okla.1982); *Sheldon v. Powell*, 99 Fla. 782, 128 So. 258, 262–263 (1930); *Guaranty Trust Co. of New York v. Hannay*, (C.A.) [1915] 2 K.B.

536. *See also* 1 W. Anderson, *Actions for Declaratory Judgments*, 2–11 (2d ed. 1951); E. Borchard, *Declaratory Judgments*, 233 (2d ed. 1941). This Court has the jurisdiction to provide declaratory relief so as to afford a party a means to vindicate a judicially cognizable interest.

■ We have in the past provided a remedy when a branch of state government brings a legal claim alleging that an "intolerable conflict" exists with a co-ordinate branch of state government amounting to governmental gridlock. *Swezey v. Fisher*, 484 P.2d 501, 503 (Okla.1971). *See also Moore–Norman Area Vocational Tech. Sch. Dist. v. Board of Trustees*, 519 P.2d 497 (Okla.1974). We have further stated that a branch of government will not be permitted to destroy itself, and that this court must utilize an "appropriate remedy sufficient to preserve it." *Davis v. McCarty*, 388 P.2d 480, 488 (Okla.1964). The Commission claims that an intolerable conflict exists with the Legislature, and that the Commission's implementation of H.J.R. 1077 would effectively destroy the Commission. The requested relief is a claim that the *Commission is adversely affected*[5] by the face of the statute, and that it need not first violate the law in order to obtain a declaration as to the validity of the law. Such a claim is proper for declaratory relief. *See Oklahoma Tax Commission v. Smith*, 610 P.2d 794, 801 (Okla.1980). We conclude that providing a form of declaratory relief to resolve a claimed intolerable conflict between the Ethics Commission and the Legislature is consistent with those situations where this court has provided a remedy to resolve inter-governmental legal

our facts today is obviously due, in part, to the lack of judicial review of acts of Parliament. *See* J.W. Gough, *Fundamental Law in English Constitutional History*, 192–213 (1955 & photo. reprint 1985).

3. Since 1893 this jurisdiction has recognized that forms of action are abolished. St.1893 § 3882; 12 O.S.1981 § 10; 12 O.S.1991 § 2002.

4. Okla. Const. Art. 2 § 6:
The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and

right and justice shall be administered without sale, denial, delay, or prejudice.
*See St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.*, 782 P.2d 915, 919 (Okla.1989).

5. Our recognition that the Commission's suit is based upon a claim that it is adversely affected is similar to those cases where we have recognized the Legislature's interest in vindicating its authority in proceedings against another governmental entity. *See Johnson v. Walters*, 819 P.2d 694 (Okla.1991); *State ex rel. York v. Turpen*, 681 P.2d 763 (Okla.1984); *State ex rel. Howard v. Oklahoma Corporation Commission*, 614 P.2d 45 (Okla.1980).

claims within the discretionary superintending jurisdiction of this court.

## II.

■ The jurisdiction of the Court is also challenged by the intervenor, Darryl F. Roberts, Majority Floor Leader of the Oklahoma Senate. He argues that the Speech or Debate Clause of the Oklahoma Constitution [6] prohibits the Commission from bringing this suit. We do not reach the merits of his argument because of the non-applicability of the clause to this controversy.

The Commission does not seek judicial review of the Respondents' acts as individual legislators. No act or omission in "speech or debate" attributable to either Respondent is challenged in this suit. Whether they voted for or against the resolution in question is of no consequence in this regard. The Respondents are simply named in their official capacities as President Pro Tempore of the Senate and Speaker of the House of Representatives. They are nominal parties. The suit is not against the Legislature, but rather seeks a declaration as to H.J.R. 1077, a law of the State of Oklahoma,[7] passed by both houses of the Legislature, signed by the Governor, and filed with the Secretary of State. It is a suit for declaratory relief from the effect of legislation—a suit *against the State itself.* See *State ex rel. Department of Highways v. McKnight,* 496 P.2d 775, 782–783 (Okla.1972), modified on other grounds in *Schrom v. Oklahoma Industrial Develop.,* 536 P.2d 904, 907 (Okla.1975), and the discussion of suits against officials in their official capacity.

The Attorney General is the Chief Law Officer of the State who appears on behalf of either the Legislature or Governor to prosecute or defend court actions where the State is an interested party. 74 O.S.Supp.1992 § 18b(3). Where the State is a party before this Court the Attorney General must ordinarily appear on the State's behalf. *State ex rel. Howard v. Oklahoma Corporation Commission,* 614 P.2d 45, 49 (Okla.1980). In actions to declare the unconstitutionality of a statute the Attorney General shall be served and is entitled to be heard. *Oklahoma Tax Commission v. Smith,* 610 P.2d at 803. *See* 12 O.S.1991 § 1653. The Court invited the Attorney General to appear herein, and on December 9, 1992, she filed her *amicus curiae* brief, challenging the jurisdiction of the Court. The interests of the State have clearly been represented in the present controversy where the Attorney General has made her objections known, and the Speaker of the House and President Pro Tempore of the Senate are before the Court in their official capacities without a challenge to the process by which they were hailed into this Court. We now turn to the merits of the case.

## III.

In the briefs submitted prior to oral argument, the issues in controversy, other than the ones discussed above, could be fitted into one of two basic categories: 1. The nature of the constitutional division of power between the Ethics Commission and Legislature to determine ethical standards of conduct for state officers and employees, and 2. The extent of the legislative funding of the Commission and whether such was unconstitutional.

During oral argument the Respondents admitted that section 9 of H.J.R. 1077 was unconstitutional in that it violated Okla. Const. Article 29. Section 9 provides the procedures for the investigatorial and prosecutorial authority of the Commission. Counsel for Respondents described it as "the heart" of the entire resolution. However, the Respondents maintained that the

---

**6.** Okla. Const. Art. 5 § 22 states:
 Senators and Representatives shall, except for treason, felony, or breach of the peace, be privileged from arrest during the session of the Legislature, and in going to and returning from the same, and, for any speech or debate in either House, shall not be questioned in any other place.

**7.** *See Board of Commissioners of Marshall County v. Shaw,* 199 Okl. 66, 182 P.2d 507 (1947); *Ward v. State,* 176 Okl. 368, 56 P.2d 136 (1936).

other sections of the Resolution were constitutional and requested that we so hold.

■ This Court is not bound by the concession. See *Jones v. Cordell*, 197 Okl. 61, 168 P.2d 130, 131 (1946) where we explained that the Court was not bound by a concession at oral argument by an assistant attorney general that an act was unconstitutional. However, we agree that section 9 violates Article 29 of the Oklahoma Constitution by imposing a statutory quorum for the Commission, as well as by impermissibly restricting the Commission's discretion.

Article 29 § 1(A) states that the Ethics Commission consists of five members. Section 1(G) states that "A majority of the members serving shall constitute a quorum." Section 9 of the Resolution requires the concurrence of *three* members for the Commission to perform certain acts. H.J.R. 1077 at § 9, amending 74 O.S.1991 § 4207, and at (E), (F), (J)(3), and (V)(2). Article 29 does not require a quorum of three members.

Section 4 of Article 29 states in part that: "The Ethics Commission shall ... when it deems appropriate, prosecute in the District Court ... violations of its rules governing ethical conduct of campaigns, state officers, and state employees." However, Section 9 as it appears in the statutes, states that a Commission order directing prosecution in the district court "shall be made only upon a determination that there is clear and convincing evidence that the respondent violated one or more provisions of the Ethics Commission Act or the rules of the Commission." H.J.R. 1077 at § 9(Q)(3), and amending 74 O.S.1991 § 4207. The decision to prosecute for vio-

lations of the rules of the Commission is constitutionally vested in the Ethics Commission, and the Legislature may not impose such a condition on the exercise of that discretion. We hold that the Respondents were correct in conceding these constitutional invalidities. The Respondents, however, argue that those sections other than section 9 are constitutional.

■ The claimed intolerable conflict between the Legislature and Commission created by H.J.R. 1077 is a dispute in identifying the distribution of power between these two government entities under our State Constitution. We conclude that one argument of the Commission is dispositive of this issue: That the Legislature can not replace in whole the substance of Ethics Commission rules by a comprehensive statutory plan seeking to regulate the ethical conduct of state officials.[8]

Article 29 states that "the Ethics Commission shall promulgate rules of ethical conduct for campaigns for elective state office and for campaigns for initiatives and referenda, including civil penalties for violation of these rules." Okla. Const. Art. 29 § 3. Article 29 gives the Legislature a say in disapproving proposed rules promulgated by the Ethics Commission: "Newly promulgated rules shall be presented to each House of the Legislature.... If these rules are not disapproved by joint resolution, ... they shall be effective." Okla. Const. Art. 29 § 3. This section also gives power to the Legislature *to repeal* or *modify effective* Commission rules: "Effective Commission Rules may also be repealed or modified by law passed by majority vote of each House of the Legislature." *Id.* These provisions clearly show that the pow-

---

**8.** The sections of the Resolution are codified in the 1992 Statutes:

§ 2 at 74 O.S. § 4201; § 3 at 74 O.S. § 4202; § 4 at 74 O.S. § 4203; § 5 at 74 O.S. § 4203.1; § 6 at 74 O.S. § 4206; § 7 at 74 O.S. § 4206.3; § 8 at 74 O.S. 4206.4; § 9 at 74 O.S. § 4207; § 10 at 74 O.S. § 4207.1; § 11 at 74 O.S. § 4208; § 12 at 74 O.S. § 4209; § 13 at 74 O.S. § 4209.1; § 14 at 74 O.S. § 4209.2; § 15 at 74 O.S. § 4211; § 16 at 74 O.S. § 4211.1; § 17 at 74 O.S. § 4211.2; § 18 at 74 O.S. § 4212; § 19 at 74 O.S. § 4213; § 20 at 74 O.S. § 4214; § 21 at 74 O.S. § 4214.1; § 22 at 74 O.S. 4214.2; § 23 at 74 O.S. § 4215; § 24 at 74 O.S. § 4216; § 25 at 74 O.S. § 4217; § 26 at 74 O.S. § 4218; § 27 at 74 O.S. § 4219; § 28 at 74 O.S. § 4219.1; § 29 at 74 O.S. § 4219.3; § 30 at 74 O.S. § 4223; § 31 at 74 O.S. § 4224; § 32 at 74 O.S. § 4225; § 33 at 74 O.S. § 840.32; § 34 at 74 O.S. § 4230; § 35 at 74 O.S. § 4230.1; § 36 at 74 O.S. § 4236; § 37 at 74 O.S. § 4241; § 38 at 74 O.S. § 4242; § 39 at 74 O.S. § 4243.1; § 40 at 74 O.S. § 4246; § 41 at 74 O.S. § 4246.1; § 42 at 74 O.S. § 4246.2; § 43 at 74 O.S. § 4246.3; § 44 at 74 O.S. § 4246.4.

er exercised in creating, modifying, and repealing Ethics Commission Rules is shared between the Ethics Commission and the Legislature.

We have surveyed the respective spheres of constitutional power possessed by the executive, legislative, and judicial branches of our state government, and have explained that one constitutional body may not exercise a function expressly set apart to another constitutional body. *Tweedy v. Oklahoma Bar Association,* 624 P.2d 1049, 1053–1054 (Okla.1981). Article 29 § 3 requires the Ethics Commission to promulgate rules of ethical conduct for state officers and for campaigns for elective state office. The obvious meaning of this provision is that the people of the State desire the ethical conduct of state officials to be regulated by rules of the Ethics Commission. H.J.R. 1077 appears as an attempt to create a comprehensive statutory ethics plan for regulating the conduct of public officers and employees. The wide scope of this plan is shown not only by its length (sixty-three pages in the published Session Laws of 1992) but also by the range of provisions from very general subject matter to specific guidelines. H.J.R. 1077 effectively replaces all of the Commission's rules with statutory enactment so that ethical conduct is regulated by statute instead of the rules of the Commission. The Legislature cannot control the ethical conduct of state officials by legislative enactments that completely bypass the Commission's rule-making authority.

The Legislature may modify or repeal effective Commission rules by legislative enactment. Okla. Const. Art. 29 § 3. The Legislature has authority to enact, modify, or repeal ethical conduct laws providing for criminal penalties. Okla. Const. Art. 29 § 6.[9] It possesses the authority to enact laws governing the ethical conduct of local political subdivision officers and employees

and laws governing the conditions of state government employment. *Id.* It also possesses constitutional authority independent of Article 29 to "enact laws to prohibit members of the Legislature from engaging in activities or having interests which conflict with the proper discharge of their duties and responsibilities." Okla. Const. Art. 5 § 21.

In sum, the Legislature possesses authority by law to disapprove of proposed rules, modify or repeal effective rules, provide criminal penalties for certain conduct, determine conditions of state employment, regulate local political subdivision officers and employees, and regulate the conduct of members of the Legislature. To the extent that H.J.R. 1077 exceeds these types of legislative authority it violates Article 29. Thus, we turn to an analysis of the individual sections of H.J.R. 1077.

Section 1 does only one thing; it disapproves the proposed Commission Rules. The Commission has explicitly stated that it does not attack the constitutionality of that section in this proceeding.[10] Thus, section 1 remains as law without challenge. The Commission's proposed Rules stand disapproved.

 Sections 2–25 (inclusive), 27–32 (inclusive), 34, 35, 39, 41, 43, and 44 all contain either legislative statements of Ethics Commission policy, regulate ethical conduct of state officers and public employees, provide for procedures before the Commission, provide civil penalties for violations of the ethics statutes amended by the Resolution, regulate ethical conduct for ballot measures, or provide for financial disclosure statements of public officials. These sections attempt to regulate ethical conduct that is to be regulated by Commission rules under Article 29, and they would be constitutional *as to the method of enactment* if enacted in the form of Commission rules or

**9.** Article 29 § 6 states:
Criminal penalties. This Article shall not prevent enactment of laws prohibiting certain conduct by political candidates, government officers, government employees, or other persons and providing criminal penalties for such conduct. It also shall not prevent enactment of laws governing ethical conduct of

local political subdivision officers and employees, nor shall it prevent enactment of law governing conditions of state government employment.

**10.** Okla. Const. Art. 29 § 3 authorizes legislative disapproval.

as Legislature-modification of an effective Commission rule. But when the method of their enactment has the effect of replacing the constitutional power and role of the Ethics Commission as a constitutional rule-making authority for regulating the conduct of state officials then they must be found to be an unconstitutional infringement of the Commission's power.

■■■■■ Section 26 amends 74 O.S.1991 § 4218 and provides for an income tax deduction for persons contributing to a political party or candidate. The Ethics Commission has no authority over tax deductions and section 26 does not usurp Commission authority. Section 36 amends 74 O.S.1991 § 4236. It regulates ethical conduct in the employment of a lobbyist and provides for a criminal penalty. This section is within the legislative authority as recognized by Art. 29 § 6. Section 40 amends 74 O.S.1991 § 4246 and regulates the ethical conduct of legislators. The Legislature is given express constitutional authority to regulate the ethical conduct of legislators apart from Article 29, and section 40 does not usurp the Commission's Article 29 authority. Okla. Const. Art. 5 § 21.

■■■■■ Section 33 does not amend the Ethics Commission Act (74 O.S.1991 §§ 4200–4247), but is codified at 74 O.S.Supp.1992 § 840.32, and is thus part of the Oklahoma Personnel Act.[11] It provides:

Every state and county officer and state and county employee:

1. Shall support, obey, and defend the Constitution and laws of the State of Oklahoma; and

2. Shall not knowingly receive, directly or indirectly, any money or other valuable thing for the performance or nonperformance of any act or duty pertaining to his or her office, other than the compensation allowed by law.

H.J.R. 1077 § 33, Okla.Sess.L.1992 at 2261.[12]

The Oklahoma Personnel Act provides that "any person who willfully violates any provision of the Oklahoma Personnel Act ... shall be guilty of a misdemeanor...." 74 O.S.1991 § 841.23. This section is within the authority of the legislature to enact apart from the constitutional rule-making authority of the Commission. Okla. Art. 29 § 6.

■■■■■ Before discussing the remaining sections of the Joint Resolution we must discuss the severability of the various non-offending sections. The Resolution was not enacted with a "severability" or "separability" clause. Title 75 O.S.1991 § 11a provides a presumption of severability unless we find (1) the non-offending portions so connected with and dependant upon the unconstitutional portion that we cannot presume the Legislature would have enacted the former without the latter, or (2) that the non-offending portions are incapable of standing alone. Severability of the non-offending sections thus does not necessarily depend on the presence of the clause. *See United States v. Jackson*, 390 U.S. 570, 585, n. 27, 88 S.Ct. 1209, 1218, n. 27, 20 L.Ed.2d 138 (1968).

■■■■■ Sections 26 (income tax deduction), 33 (personnel act criminal penalty), 36 (lobbyist criminal penalty), and 40 (regulating the conduct of legislators) are all capable of standing alone from the other sections. Section 26 does not need any other section of the Resolution to give meaning to its language, and is severable. Section 33 does not rely upon provisions of the Ethics Act and is also severable. Section 36 amends 74 O.S.1991 § 4236 and refers to those individuals required to be registered as a lobbyists under the Ethics Commission Act, prohibits certain activity by lobbyists, and imposes a criminal penalty. Statutes identifying those individuals required to register as lobbyists are set forth in 74 O.S.1991 §§ 4227 and 4228, and neither of these sections was amended by H.J.R.

---

11. The Oklahoma Personnel Act is codified at Chapter 27A of Title 74 and includes 74 O.S. 1991 §§ 840.1–841.24 (inclusive).

12. We also note the similarity of the language of section 33 and the oaths of office provided by Okla. Const. Art. 15 § 1 and 51 O.S.1991 § 2. *See State ex rel. Blankenship v. Freeman*, 440 P.2d 744, 753–754 (Okla.1968).

1077. Section 36 is capable of enforcement apart from the other section of the Resolution, and we conclude that it also is severable. Section 40 amends 74 O.S.1991 § 4246, and regulates the conduct of legislators and no other officials. A comparison of the Resolution's section 40 and 74 O.S. § 4246 reveals almost no change in the provisions, and other provisions of the resolution need not be used to give meaning of substance to section 40. We conclude that section 40 is severable. Thus, Sections 1, 26, 33, 36, and 40 remain as viable legislative enactments.

■■■ Section 42 amends 74 O.S.1991 § 4246.2, and regulates the ethical conduct of both state officers and employees as well as county officers and employees. The language does not rely upon other provisions of the Resolution, can stand alone, and is severable as to the other sections. However, section 42 is partially invalid in itself. Article 29 § 6 allows the Legislature to enact laws governing the ethical conduct of "local political subdivision officers and employees", and while the regulation of county officials and employees falls into this category the regulation of state officials and employees does not. Section 11a of Title 75 also requires examining whether an act may be severable in application.[13] We conclude that section 42 is severable, and therefore survives, in its application to county officers and employees, but that section 42 may not be applied to state officers and employees.[14]

■■■ Section 45 of the Resolution repeals 74 O.S.1991 §§ 4219.2, 4221, 4226, 4233, 4245, and 4247, all providing for misdemeanor penalties. The Legislature clearly has the authority to repeal criminal penalties. Okla. Const. Art. 29 § 6. However, the Legislature enacted comprehensive civil

penalties, mostly appearing in section 13 of the Resolution. Section 13, as we have said, is among those sections that must be overturned for the unconstitutional manner in which it was enacted. The Commission, anticipating our ruling on the legislative civil penalties, argues that striking down the civil penalties while allowing section 45 to remain would result in no civil or criminal penalties for violations of the Ethics Act. The point is well taken. We are confident that the Legislature would not intend any severability analysis to be applied to the extent that both civil penalties and criminal penalties would be missing from a statutory scheme designed to encourage ethics in government. We agree that if the civil penalties are struck down then the section *repealing* the criminal penalties must also go.

■■■ When an unconstitutional statute repeals a former statute the earlier statute is deemed unaffected by the void repealing enactment. "If an express repealing clause is contained in a statute which is unconstitutional, it seems the repealing clause will not take effect." T. Sedgwick, *A Treatise on the Rules Which Govern the Interpretation and Construction of Statutory and Constitutional Law*, 110 n. (J. Pomeroy 2d ed. 1874 & photo. reprint 1980). In line with this authority this Court observed that "if a statute which purports to repeal a prior one is itself void, said prior statute is in no wise affected by the attempted repealing enactment." *Porter v. Commissioners of Kingfisher County*, 6 Okl. 550, 51 P. 741, 743 (1898). Our Court of Criminal Appeals has followed the rule in *State ex el. Burns v. Steely*, 600 P.2d 367, 368–369 (Okla.Cr.App.1979). One court has explained this rule as the result

---

**13.** Section 11a states in part: "For any act enacted on or after July 1, 1989, unless there is a provision in the act that the act or any portion thereof or the application of the act shall not be severable, the provisions of every act or application of the act shall be severable."

**14.** County officials and their campaigns are regulated by other sections of the Resolution that also regulate state officials and their campaigns. For examples see the definitions of "campaign",

"candidate", and "local office" in section 3 and the required filing of reports with either the Ethics Commission or clerk of the appropriate political subdivision as specified in section 15. However, we have concluded that the sections of the Resolution regulating both state and local officials are not severable in application to local officials and remain unconstitutional *in toto*. The lone exception is section 42 and its limited application.

of the principle that a invalid statute is a nullity:

It is the rule in this state that an invalidly enacted statute is a nullity. It is as inoperative as if it had never been passed. *State ex rel. Evans v. Brotherhood of Friends*, 41 Wash.2d 133, 247 P.2d 787 (1952). The natural effect of this rule, as countenanced by the [State v.] *Tieman* [32 Wash. 294, 73 P. 375 (1903) ] holding, is that once the invalidly enacted statute has been declared a nullity, it leaves the law as it stood prior to the enactment. *Boeing Co. v. State*, 74 Wash.2d 82, 442 P.2d 970 (1968); 82 C.J.S. *Statutes* § 75, at 132 (1953); 16 Am.Jur.2d *Constitutional Law* § 177, at 402 (1964).

*State ex rel. Goodner v. Speed*, 96 Wash.2d 838, 640 P.2d 13, 16 (1982), *cert. denied*, 459 U.S. 863, 103 S.Ct. 140, 74 L.Ed.2d 119 (1982).

■■■ Generally speaking an unconstitutional law confers no rights, creates no liability, and affords no protection. *Oklahoma Education Ass'n., Inc. v. Nigh*, 642 P.2d 230, 239 (Okla.1982). Consistent with this rule we have explained that the invalidity of an unconstitutional statute relates to the date of the statute's enactment and not to some later date: "The courts have no power to make a statute inoperative only from the date of an adjudicated invalidity, because the courts merely adjudge that a statute conflicts with organic law, and the Constitution then operates to make the statute void from its enactment, the courts having no power to control the operation of the Constitution." *State ex rel. Tharel v. Board of County Commissioners of Creek County*, 188 Okl. 184, 107 P.2d 542, 547 (1940), and quoting with approval from *State ex rel. Nuveen v. Greer*, 88 Fla. 249, 102 So. 739, 745 (1924). However, when an invalid statute involves both a compulsion of statutory duties by public officials and such officials rely on the well-known presumptive validity of statutes then a court may make the ruling on the statute prospective in effect. *See General Motors v. Oklahoma County Board of Equalization*, 678 P.2d 233, 238–241 (Okla.1983), *cert. denied* 466 U.S. 909, 104 S.Ct. 1689, 80 L.Ed.2d 163 (1984); *Oklahoma Education Ass'n., Inc. v. Nigh*, 642 P.2d 230, 239 (Okla.1982). Criminal jurisprudence recognizes this principle in the context of the *ex post facto* clause of our State Constitution, which prohibits the punishment of an act which was not defined as criminal at the time of the act. *Morrison v. State*, 619 P.2d 203, 207 n. 1 (Okla.Cr.App.1980); Okla. Const. Art. 2 § 15. See also *Morris v. Meachum*, 718 P.2d 1354, 1355 (Okla.1986) where we explained that the clause protects substantial personal rights from retroactive deprivation. The judicial construction of state statutes imposing criminal penalties is also limited by the Due Process Clause so that an *ex post facto* result is not achieved. *Bouie v. Columbia*, 378 U.S. 347, 353–354, 84 S.Ct. 1697, 1702–1703, 12 L.Ed.2d 894 (1964).

We conclude that section 45 may not be severed, is unconstitutional for that reason, and thus the provisions of 74 O.S.1991 §§ 4219.2, 4221, 4226, 4233, 4245, and 4247, fixing misdemeanor penalties, remain valid, but that the enforcement of such provisions must not apply to acts occurring while section 45 was on the books and prior to the effective date of this opinion.

■■■ The remaining sections, 46, 47, 48, and 49, need no lengthy analysis. Sections 46, 48 and 49 provide for the effective dates of the other sections of the H.J.R. 1077, and they are constitutional and severable to the extent that they apply to those sections that we have identified herein as constitutional and severable. Section 47 merely states that section 46 shall not be codified in the Oklahoma Statutes and is not constitutionally infirm.

In sum we conclude that of H.J.R. 1077, Sections 2–25 (inclusive), 27–32 (inclusive), 34, 35, 39, 41, 43, 44, and 45 are unconstitutional. We conclude that sections 1, 26, 33, 36, and 40 are constitutional and remain as valid enactments. We conclude that section 42 remains as a valid enactment in part because it is constitutional in its application to county officers and employees, but unconstitutional in application to state officers and employees. We conclude that sec-

tions 46, 47, 48, and 49 are constitutional as applied to the sections of the Resolution which have been determined as constitutional.

The Rules of the Ethics Commission promulgated pursuant to Article 29, Section 3 and submitted to the Legislature and Governor on February 4, 1992, have been disapproved by the Legislature. That disapproval is constitutional and is in no way challenged in this proceeding by the Commission or any party. The Commission shall once again proceed with due dispatch to promulgate Rules for ethical conduct under Section 3.

The usual effective date for our opinions in original actions is the date the opinion is entered. *Movants to Quash Grand Jury Subpoenas v. Powers*, 839 P.2d 655, 656 (Okla.1992). However, we recognize that our opinion will cause officials to readjust their procedures so as to conform to our opinion as opposed to the now unconstitutional sections of the Resolution. A simultaneous pronouncement of the law and effective date of that law gives no period of readjustment to the appropriate officials. Such temporary confusion should be avoided, and this court possesses the authority to make the effect of its ruling prospective in such a case. *General Motors v. Oklahoma County Board of Equalization, supra.* **We conclude that the effective date of our opinion herein shall be thirty days from the date this opinion is filed with the Clerk of this Court.**

We decline at this stage to assume original jurisdiction on the Commission's highly fact-specific claim of critically deficient funding of the Ethics Commission. *See State ex rel. Blankenship v. Atoka County*, 456 P.2d 537, 541 (Okla.1969), (court declined to assume original jurisdiction due to a lack of facts necessary to adjudicate the issue); *Application of Grand River Dam Authority*, 554 P.2d 5, 8 (Okla.1976), (discovery and evidentiary issues are more properly the subject of District Court proceedings).

Original jurisdiction is assumed for the purpose of granting declaratory relief as to the constitutionality of H.J.R. 1077 as adjudicated herein. Original jurisdiction is not assumed on the Commission's request for declaratory and other relief on its claim of deficient funding of the Ethics Commission. Thus, original jurisdiction is assumed in part and denied in part, and declaratory relief is granted in part and denied in part.

HODGES, C.J., LAVENDER, V.C.J., and HARGRAVE and WATT, JJ., concur.

ALMA WILSON, J., concurs specially.

OPALA, J., concurs in result.

SIMMS, J., dissents.

KAUGER, J., recused.

OPALA, Justice, concurring in result.

The court reaffirms today its original cognizance *to entertain this controversy and to craft,* unhampered by the *straitjacket of the ancient English writ system,*[1] a *remedy*[2] that *fits*[3] this tendered

---

**1.** In England an *original writ* commenced the action in a *common law court.* The writ not only gave the court *subject matter jurisdiction,* but also empowered the sheriff to compel the defendant to appear. The English *sovereign* was the "fountain of justice;" *no cause could proceed without his authority and permission, signified by the writ's issuance.* By contrast, our judiciary has always been a separate and coordinate branch of government. *No special license or authority from any executive—by writ or otherwise—is required to set a court in motion. See* SHIPMAN ON COMMON-LAW PLEADING § 3 (3d ed. 1923), citing *Parsons v. Hill,* 15 App.D.C. 532 (1900) (per Morris, J.) and *Philadelphia, B. & W.R. Co. v. Gatta,* 85 A. 721, 724–725 (Del.1913).

The King's Bench used *prerogative writs* to exercise *superintendence* over inferior courts and to keep the latter tribunals *within the proper bounds of their jurisdiction. Matney v. King,* 20 Okl. 22, 93 P. 737, 744 (1908). *See* J. Koffler and A. Reppy, HANDBOOK OF COMMON LAW PLEADING § 321 (1969); *see also infra* notes 12, 14 and 15.

**2.** The remedy we afford today, a declaration of rights, is *not a new rubric of jurisdiction, but rather an affordable form of relief. Conoco, Inc. v. State Dept. of Health,* Okl., 651 P.2d 125, 131 (1982); *Sheldon v. Powell,* 99 Fla. 782, 128 So. 258, 262–263 (1930). *Declaratory judgments are particularly useful in justiciable controversies where a plaintiff would otherwise be required to act or refrain from acting at his legal peril. Conoco, supra* at 131.

**3.** *A declaration of rights may be all that is needed to settle a controversy. See State ex rel. Tax*

*complaint of governmental usurpation.*[4] I concur in the result the court reaches today. I write separately to (1) *explain the quintessence of the Supreme Court's original jurisdiction*[5] and its *interplay with the prerogative writ system of the English remedial regime*[6] and (2) focus on the *outer limit of legislative immunity* from suit under our constitution's Speech and Debate Clause.[7]

> Com'n. v. Mourer, Okl., 596 P.2d 882, 887–888 (1979); *Sadberry v. Hope,* Okl., 444 P.2d 175, 178 (1968); *Stone v. Hodges,* Okl., 435 P.2d 165, 167 (1967).

**4.** Legislative usurpation is *not* remediable by the English writ model because the English *Parliament* literally *stands above the law;* an English judge could be impeached for questioning the legality of legislative or of executive action that is immune. By contrast, our fundamental law, Art. 4, § 1, Okl. Const., expressly and inflexibly commands that *the functions of government be divided into three departments, which provide checks and balances for each other.* *Sterling Refining Co. v. Walker,* 165 Okl. 45, 25 P.2d 312, 318 (1933). The provisions of Art. 4, § 1 are:

> "The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, *the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."* [Emphasis added.]

*In our tripartite system of government, legislative [and executive] actions may be tested for constitutional orthodoxy in the exercise of this court's original cognizance.* *Jones v. Freeman,* 193 Okl. 554, 146 P.2d 564, 570–71 (1944), cert. denied, 322 U.S. 717, 64 S.Ct. 1288, 88 L.Ed. 1558 (1944). *It is this court's function to prevent governmental usurpation and to step in where judicial inaction would lead a high-level organ of state government to self-destruction.* *State ex rel. Blankenship v. Atoka County,* Okl., 456 P.2d 537, 539 (1969) (now superseded on other grounds by statute; *see Tulsa County v. Braswell,* Okl., 766 P.2d 341 (1988)); *Davis v. McCarty,* Okl., 388 P.2d 480, 488 (1964).

For the pertinent text of Art. 7, § 4, Okl. Const., which grants this court *original jurisdiction, see infra* note 5.

**5.** The pertinent provisions of Art. 7, § 4, Okl. Const., are:

> "The *appellate jurisdiction* of the Supreme Court shall be coextensive with the State and shall extend to all cases at law and in equity; ... The *original jurisdiction* of the Supreme Court shall extend to a *general superintending control* over all inferior courts and all Agencies, Commissions and Boards created by law.

## I

## THE SUPREME COURT'S ORIGINAL JURISDICTION

The provisions of Art. 7, § 4, Okl. Const.,[8] grant the Supreme Court (1) appellate jurisdiction, (2) original jurisdiction and (3) superintending control[9] over courts and administrative agencies exercising adjudi-

> The Supreme Court ... shall have power to issue, hear and determine writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition and such other remedial writs as may be provided by law and may exercise such other and further jurisdiction as may be conferred by statute. * * * " [Emphasis added.]

**6.** In *Bellmon v. Barker,* Okl., 760 P.2d 813, 816 (1988) (Opala, J., dissenting), I commented that no writ needed to be *issued* to settle that dispute, since a pronouncement would have sufficed. In this case, as in *Barker, no ancient writ* measures the breadth of our *original cognizance. The claim now before us presents a justiciable controversy in which no other court can afford speedy and adequate relief. See State ex rel. York v. Turpen,* Okl., 681 P.2d 763, 768 (1984) (Opala, J., concurring).

*Writs are not immovable fixtures in our jurisdictional catalogue. Barker, supra* at 816 (Opala, J., dissenting). *See Morrow v. District of Columbia,* 417 F.2d 728, 732–33 (D.C.Cir.1969), where the court holds that "prerogative writs are thus means to *effectuate* a court's jurisdiction; the writs by themselves cannot *confer* jurisdiction." [Emphasis added.]

**7.** The text of Art. 5, § 22, Okl. Const., provides:

> "*Senators and Representatives* shall, except for treason, felony, or breach of the peace, be privileged from arrest during the session of the Legislature, and in going to and returning from the same, and, *for any speech or debate in either House, shall not be questioned in any other place."* [Emphasis added.]

**8.** For the pertinent provisions of Art. 7, § 4, Okl. Const., *see supra* note 5.

**9.** *Original jurisdiction and superintendence,* while *separate* and *distinct* concepts, are *closely related.* Superintendence, which is carried out by *the court's exercise of original jurisdiction,* is not quite coextensive with the range of that cognizance. The object of superintendence is to keep *courts and administrative agencies' exercise of adjudicative powers* within their *proper sphere of activities.* Art. 7, § 4, Okl., Const., *supra* note 5; *Board of Com'rs of Harmon County v. Keen,* 194 Okl. 593, 153 P.2d 483, 485 (1944). *See State v. District Court,* 49 N.D. 27, 186 N.W. 381, 385–86 (1921).

cative powers. The limit of our original cognizance is measured *not* by the kind of personal command that would be issued under the label of some ancient writ but *by the appropriateness of the controversy for our resolution in order to* (a) finally settle a private right or define public conduct and (b) place that right or conduct on its proper track within the body of our law.[10] Although the *tools* given this court *to effectuate* its original jurisdiction [11] *include* writs of habeas corpus, mandamus,[12] *quo warranto*,[13] certiorari,[14] and prohibi-tion,[15] the constitutional framers did *not* impose upon the Supreme Court a remedial freeze that *restricts the exercise of original jurisdiction* to the parameters of the ancient writs.[16] A contrary conclusion would foist on our system a *ludicrous anachronism.* It would uncritically accept as a given that *at our constitution's birth in 1907 the drafters had intended to return Oklahoma's remedial regime to the already abolished writ system for but one judicial institution—her highest court.*[17]

Superintendence places this court "in the same relation to the inferior courts of the state as the court of King's Bench bore to the inferior courts of England, under the common law." *Matney, supra* note 1 at 93 P. 744. *See State v. Kight,* 49 Okl. 202, 152 P. 362, 363–64 (1915); *Keen, supra* 153 P.2d at 484–85; *see also* ANNOTATION, SUPERINTENDING CONTROL OVER INFERIOR TRIBUNALS, 112 A.L.R. 1351 (1938).

10. Original cognizance is often referred to as *"publici juris."* This term is used when causes tendered to the court concern the entire state or one of its governmental subdivisions. BLACK'S LAW DICTIONARY, p. 1099 (6th ed. 1990). *Although public law is not a separate rubric of original jurisdiction, if important public rights are at stake in a tendered controversy, the court considers them as factors militating in favor of assuming original cognizance. See Turpen, supra* note 6 at 768 (Simms, J., dissenting). *The court is generally inclined to exercise original cognizance over a public-right controversy (a) when its importance and urgency demand immediate attention and (b) when lower courts would be ill-equipped to settle the dispute.*

11. Original jurisdiction was *first established* by the provisions of the now repealed Art. 7, § 2, Okl. Const. (ratified in 1907). Its text was *essentially the same* as that now found in Art. 7, § 4, Okl. Const. Repeal of the earlier Article 7 and the later version's adoption were proposed by Laws 1967, p. 698, H.J.R. no. 508. The measure was approved at the election on July 11, 1967 (State Question No. 448, Legislative Referendum No. 164).

12. Lord Mansfield, defining the *scope of the writ of mandamus,* stated that it was "to prevent disorder from a failure of justice and defect of [policing]. [I]t ought to be used *on all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one." State v. Ross,* 76 Okl. 11, 183 P. 918, 920 (1919), quoting from *Rex v. Barker,* 3 Burr. 1265, 97 Eng.Rep. (King's Bench) 823 (1762).

13. Although the *writ* of *quo warranto* was *abolished by statute,* its *abrogation did not destroy the court's jurisdiction over competing claims to* an office. *Mourer, supra* note 3 at 885; *Newhouse, infra* note 16 at 110 P. at 1121–1122. *See* the pertinent terms of 12 O.S.1991 §§ 1531 and 1532, which are:

"[§ 1531:] The writ of *quo warranto,* and proceedings by information in the nature of *quo warranto,* are abolished and *the remedies heretofore obtainable in those forms may be had by civil action; . . ."*
"[1532:] *Such action may be brought in the Supreme Court. . . ."* [Emphasis added.]

14. By the use of certiorari King's Bench (also known by its Latin name of *Coram Rege* ) (1) kept inferior courts within their bounds, (2) exercised superintendence over usurpation of jurisdiction by inferior courts and (3) maintained the supremacy of the royal courts pronouncing common-law judicature. *See* Reppy, *supra* note 1 at § 321.

15. A *writ of prohibition* afforded a remedy against *governmental usurpation by judicial and petty officials of the Crown. See* SHIPMAN, *supra* note 1 at § 341.

16. *Newhouse v. Alexander,* 27 Okl. 46, 110 P. 1121, 1121–22 (1909); *State v. Allen,* 5 Kan. 124, 128 (1869); *State ex rel. Attorney General v. Messmore,* 14 Wis. 125, 129 (1861).

17. Forms of action at common law were abolished at our statehood. St.1893 § 3882; R.L. 1910 § 4650; 12 O.S.1981 § 10; 12 O.S.1991 § 2002. Although the Code of Civil Procedure, which governed Oklahoma before its repeal in 1984, was designed to eliminate some of the extreme technicalities of common-law procedure, a pleader was still required to elect between inconsistent remedies. The legislature later adopted the *federal notice pleading regime. See* 12 O.S.1984 Supp. §§ 2001 *et seq.;* 12 O.S. 1991 § 2001 *et seq. With its enactment, the doctrine of mandatory election of remedies before submission became an anachronism.* 12 O.S.1991 § 2008(E)(2); *Howell v. James,* Okl., 818 P.2d 444, 446–448 (1991). *If we were to measure the breadth of this court's original jurisdiction by the fitness of some common-law writ*

*Prerogative writs do not translate into jurisdiction;* they rather afford examples of personal commands that may be used in the exercise of this court's cognizance. Even the case that does not neatly fall within the framework of some prerogative writ may nonetheless be appropriate for this court's assumption of original jurisdiction [18] if (1) it is *otherwise fit for settlement by this court* and (2) the *orderly process of trial and review would be ineffective or inadequate to afford relief that is one's due.* [19] Both of these criteria are met today by the Commission's quest for settlement of competing claims to regulatory power over ethics in government. [20]

In sum, *when invoking this court's original jurisdiction, one need not pretend that one's cause is remediable within the framework of some ancient prerogative writ;* [21] rather, the pleader must convince this court that the tendered cause, like that of the Commission before us today, is an extraordinary justiciable controversy for which no effective or adequate relief is available from any other court.

## II

## LEGISLATORS' CONSTITUTIONAL IMMUNITY FROM SUIT

As for Part II of today's opinion, I concur *only* in the court's pronouncement that this is a suit against the State itself [22] and that the Attorney General, as the chief law officer, may appear as her counsel. [23] *Legislators are absolutely protected from suit calling for judicial inquiry into their performance "within the sphere of legiti-*

for the occasion at hand, as the Attorney General counsels us to do, we would have to resurrect the abolished "forms of action," a solution hardly intended by the constitutional framers.

**18.** *A case is appropriate for the exercise of original cognizance only if the petitioner shows that adequate relief is unavailable in any other court.* State v. McCullough, 67 Okl. 8, 168 P. 413, 414 (1917). *See* Rule 37, Rules of the Supreme Court of Oklahoma, 12 O.S.1991, Ch. 15, App. 1. An application to assume original jurisdiction must contain "the *reasons* ... such action or proceeding is *brought in the Supreme Court* instead of another court of competent jurisdiction and why *original jurisdiction should be assumed....*" [Emphasis added].

**19.** Today's controversy is both (1) *justiciable* and (2) appropriate for today's exercise of *original cognizance.* A *justiciable* controversy is a *real and substantial cause which is appropriate for judicial determination,* rather than a dispute or difference of hypothetical, abstract or academic nature. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). The cause before us clearly meets the law's justiciability requirement. *Two high-level organs of state government are running on a collision course.* The Commission is entitled to learn *at the earliest time possible* whether it must follow the norms of ethics prescribed by the Legislature or its own rules; *it need not transgress legislative law to obtain a declaration of its invalidity.* Democratic Party of Oklahoma v. Estep, Okl., 652 P.2d 271, 274 n. 12 (1982).

**20.** *This cause is pressed upon us for constitutional testing of the Legislature's power over the rules promulgated by the Commission.* Our gov-

ernmental framework confines each organ *to its assigned responsibility.* "When any [governmental organ] acts, it is presumptively exercising the power the Constitution has delegated to it." *I.N.S. v. Chadha,* 462 U.S. 919, 951, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1983). To *maintain* our tripartite system, "[t]he hydraulic pressure inherent within each of the separate [departments] to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted." *Chadha, supra* at 462 U.S. 951, 103 S.Ct. 2784.

**21.** *Today a pleader need not correctly identify a theory of recovery nor describe the remedy affordable for the asserted right's vindication.* Silver v. Slusher, Okl., 770 P.2d 878, 881 n. 7 (1989), cert. denied, 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989); *Doss Oil Royalty Co. v. Texas Co.,* 192 Okl. 359, 137 P.2d 934, 939 (1943). *The court will craft the available relief which the facts justify.* Doss, supra, 137 P.2d at 939.

**22.** *See State ex rel. Department of Highways v. McKnight,* Okl., 496 P.2d 775, 782–783 (1972), modified on other grounds in *Schrom v. Oklahoma Industrial Develop.,* Okl., 536 P.2d 904, 907 (1975).

**23.** *See* 74 O.S.Supp.1992 § 18b(3); *State ex rel. Howard v. Oklahoma Corporation Commission,* Okl., 614 P.2d 45, 49 (1980). The duties of the Attorney General set out in § 18b(3) are:

"*To appear* at the request of the Governor, the Legislature, or either branch thereof, *and* prosecute and *defend in any court ... any cause ... in which the state may be a party or interested....*" [Emphasis added.]

*mate legislative activity.*"[24] I would hence go farther than the court ventures today and place greater emphasis on the principle that *legislators may not be haled into court, either to account for acts that occurred in the course of legislative process or for judicial inquiry into their motivation for those acts.*[25] The legislative privilege has never been limited to words spoken in debate.[26] The constitutional immunity *shields all legislation-related conduct, whether a legislator*[27] *be sued (1) personally, (2) in an official capacity, or (3) as the Legislature's leader.*[28]

The U.S. Constitution's Speech and Debate Clause has been given a broad construction to achieve its two-prong goal of (a) protecting against executive or judicial intrusion into the affairs of a co-equal branch and (b) preserving the legislature as a separate, independent and equal branch of government.[29] *Our own constitution mandates no less protection for legislators. A simple instrument filed in court where the suit is pending as a legislator's plea for constitutional immunity should be entitled to* immediate attention.[30]

This proceeding *should not* have been brought against the leaders of the two Houses. These officials are *facially immune from suit.* They were summoned for a sentence of nullity that would condemn, in whole or in part, the provisions of House Joint Resolution 1077. *Legislators are not judicially accountable as enforcers or defenders of legislation, either individually or in a representative capacity.* Had legislative immunity been invoked by the leaders of the two Houses who appear today as parties respondent,[31] their

24. *Davis v. Passman,* 442 U.S. 228, 235 n. 11, 99 S.Ct. 2264, 2272 n. 11, 60 L.Ed.2d 846 (1979), quoting from *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 501, 95 S.Ct. 1813, 1820, 44 L.Ed.2d 324 (1975).

Our Speech and Debate Clause was taken directly from the United States Constitution's Art. I, § 6, cl. 1, which provides that senators and representatives *"for any Speech or Debate in either House ... shall not be questioned in any other Place."* [Emphasis added.] The origin of the Clause is attributed to the practice of the British Parliament. *Kilbourn v. Thompson,* 103 U.S. 168, 204, 26 L.Ed. 377, 391 (1881), quoting from Story, COMMENTARIES ON THE CONSTITUTION, § 866. *See also United States v. Johnson,* 383 U.S. 169, 177, 86 S.Ct. 749, 754, 15 L.Ed.2d 681 (1966). A suit against a member of the House of Commons in 1512 prompted Parliament to pass the first special immunity bill. *See Strode's Case,* discussed in *Johnson, supra* at 383 U.S. 182 n. 13, 86 S.Ct. 756 n. 13. The English Bill of Rights of 1689, which included a provision "[t]hat the Freedom of Speech, and Debates or Proceedings in Parliament, ought not to be impeached or questioned in any Court or Place out of Parliament," appears to be the source of the privilege found in our 1776 Articles of Confederation. The latter privilege, with only a slight modification, was carried into the U.S. Constitution as the Speech and Debate Clause. *See Kilbourn, supra* at 103 U.S. 203, 26 L.Ed. 391; *Johnson, supra* at 383 U.S. 177–178, 86 S.Ct. 754.

25. *U.S. v. Gillock,* 445 U.S. 360, 366–367, 100 S.Ct. 1185, 1190, 63 L.Ed.2d 454 (1980).

26. *Kilbourn, supra* note 24 at 103 U.S. 204, 26 L.Ed. 391–392.

27. *See,* e.g., *McCracken v. City of Lawton,* Okl., 648 P.2d 18, 20 (1982), where we held a *city's*

immunity protected it from liability for damages for harm dealt a landowner by its legislative action.

28. *Kilbourn, supra* note 24 at 103 U.S. 204, 26 L.Ed. 391–392.

29. *Gillock, supra* note 25 at 445 U.S. 369, 100 S.Ct. 1191. The United States Supreme Court recently reaffirmed that, although the Speech and Debate Clause's protection may not be extended further than its purposes require, *the legislative immunity it creates is beyond challenge. Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988), citing *Gravel v. United States,* 408 U.S. 606, 622–627, 92 S.Ct. 2614, 2625–2687, 33 L.Ed.2d 583 (1972); *Hutchinson v. Proxmire,* 443 U.S. 111, 123–133, 99 S.Ct. 2675, 2682–2687, 61 L.Ed.2d 411 (1979); *Doe v. McMillan,* 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); *United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1973); *Johnson, supra* note 24 at 383 U.S. 169, 86 S.Ct. 754, *Kilbourn, supra* note 24 at 103 U.S. 168, 204. *See also Davis, supra* note 24 at 442 U.S. 235 n. 11, 99 S.Ct. 2272 n. 11.

30. A special appearance and plea of immunity would suffice to invoke a legislator's *absolute shield of protection from suit for legislation-related conduct.*

31. Speaker of the House Johnson and Senate President Pro Tempore Cullison, who have been sued as "representatives of the legislature," *did not invoke their legislative immunity.* That immunity question was raised by an intervenor, Darryl F. Roberts, Majority Floor Leader of the Oklahoma Senate.

plea should have been granted and the Attorney General substituted in their stead. These leaders were compelled to *hire counsel at public expense—a far-too-frequently recurring scenario that must be deterred. I would hence declare that every legislator who invokes constitutional immunity from suit for legislation-related conduct must at once be dismissed from the action.*

## SUMMARY

Writs, which in their prerogative form are mere *remedial devices* for redressing a variety of governmental usurpation and private abuse of power, do not define the breadth of our original cognizance. The barriers they erect are not *jurisdictional but procedural.*[32] As they lie in the domain of *adjective law,* these barriers set no limit on this court's exercise of its *judicial power* to craft other appropriate remedies. Upon *assuming original jurisdiction* of a controversy that is fit for this court's resolution, that *remedy will be fashioned which appears necessary to vindicate a party's claim for relief.*

Legislators must not be haled into court to *answer for their legislation-related conduct.* They are *neither enforcers nor defenders* of their labors' product.

ALMA WILSON, Justice, concurring specially:

I concur in the majority opinion but write separately to direct attention to the redistribution of legislative power mandated by the people in adopting Article 29 of the Oklahoma Constitution.[1] Within the framework of our separation of powers doctrine,[2] Article 29 must be construed as a prohibition on the Legislature's power to confine, restrict, limit or otherwise infringe upon the rule-making authority of the Ethics Commission by enacting a statutory scheme relating to ethical conduct for state election campaigns and state officers and employees.[3]

Article 29 vests in the Ethics Commission the primary legislative or rule-making authority to determine, define and delineate ethical conduct for persons involved in state election campaigns and persons serving as state officers and state employees and to fix civil penalties for violation of the rules for ethical conduct; and it RESERVES to the Legislature the authority to reject, modify or repeal the rules of the Ethics Commission and to enact other ethics laws, including criminal laws.[4] Accordingly, the

---

**32.** For an explanation of the writ system in the English law, *see supra* note 1. In the American law writs do *not* function as a *license to invoke a court's jurisdiction for a narrowly prelimited remedy.*

**1.** Article 29, sections 1 through 7, was added to the Constitution of Oklahoma, by adoption of State Question 627, Initiative Petition No. 341 at an election held on September 18, 1990.

**2.** Okla. Consti., Art. 4, § 1.

**3.** In ascertaining the constitutionality of a legislative act, we do not look to the constitution to determine whether the Legislature is authorized to do an act, but whether the Legislature is prohibited from doing an act. *Reherman v. Oklahoma Water Resources Bd.,* 679 P.2d 1296 (Okla.1984).

**4.** Section 3 of Article 29 requires the Ethics Commission to legislate rules of ethical conduct for persons involved in state election campaigns and persons serving as state officers or state employees and civil penalties for violations of the rules of ethical conduct. Section 3 of Article 29 reserves to the Legislature the power to disapprove the rules of the Ethics Commission prior to their effectiveness; to repeal effective rules of the Ethics Commission; to modify effective rules of the Ethics Commission; and to enact other governmental ethics provisions to be enforced by the Ethics Commission. By this reservation, the Legislature's power to develop the policy of governmental ethics laws is now secondary to that of the Ethics Commission. That is, the Legislature's power to develop policy is second in order of time to that of the Ethics Commission and the exercise of its power is limited to modification or repeal of any effective rule of the Ethics Commission and/or enactment of other ethics laws to be enforced by the Ethics Commission. Section 3 further restricts the Legislature's power to develop the policy of governmental ethics laws by requiring that the Legislature's disapproval, repeal or modification of the rules of the Ethics Commission be by joint resolution, subject to veto by the Governor. The Legislature may reject the rules of all other agencies by concurrent resolution which is not subject to gubernatorial veto. 75 O.S.1991, § 308.

The distribution of policy-making power in Article 29 turns aside our well settled principle

Legislature's attempt to enact a comprehensive ethics plan in H.J.R. 1077 before the Ethics Commission has done so is an unconstitutional exercise of the primary legislative power vested in the Ethics Commission.

SIMMS, Justice, dissenting:

I must dissent from this Court's assumption of original jurisdiction and crafting a form of declaratory relief based on common law writs. Title 12 O.S.1991, § 2, provides that the common law remains in force in this state unless there be a statute enacted in derogation thereof.

Title 12 O.S.1991 § 1651, et seq., the Uniform Declaratory Judgment Act, has abrogated the common law and places in the *District Court*, and no other court, the authority to entertain proceedings seeking declaratory judgment. Art. VII, sec. 4. Okl. Const., grants the power of appellate review to the Supreme Court together with certain named common law writs. Declaratory Judgment is not one of the types of proceedings enumerated in sec. 4, and this Court, in entertaining the instant action, ignores a legislatively prescribed mandate, that such actions be brought originally in a court of general jurisdiction. Relief by orderly process which would be both adequate and effective is available in the district court. We should await the judgment of that court, then exercise the constitutional power of appellate review. In the cases relied upon by the majority for interceding where there was a hopeless conflict between political entities, the moving party had sought one of the common law writs enumerated in the constitution.

We do not have an actual case or controversy before us in the legal sense. No person or entity in this case has been accused of a violation of an ethics rule or legislative enactment relating to ethics in politics or political office so as to be an aggrieved party. It is true we have before us two constitutional entities, i.e., the Eth-

ics Commission and the Legislature, but disagreement, difference of opinion, and a dispute between the two bodies does not necessarily a "lawsuit" make.

The Attorney General of Oklahoma objects to this Court's assuming original jurisdiction and adjudicating the matter, and for good reason. 74 O.S.1991 § 18b(e) provides:

"The duties of the Attorney General as the chief law officer of the state shall be:

\*　　\*　　\*　　\*　　\*　　\*

(e) To give his [her] opinion in writing upon all questions of law submitted to him [her] by the Legislature or either branch thereof, or by any state officer, board, commission or department, provided, that the Attorney General shall not furnish opinions to any but district attorneys, the Legislature or either branch thereof, or any state official, board, commission or department, and to them only upon matters in which they are officially interested."

I submit that the attorney general has the express authority to advise these parties by reason of § 18b(e) as to the constitutionality of HJR 1077 and the legal consequences of that House Joint Resolution. In this case, we have relieved the Attorney General of this statutory duty, and become, in effect, a "Super Attorney General" by issuing an advisory opinion. This I cannot, in good conscience, condone for it flirts with a violation of the separation of powers doctrine.

I first voiced my concern regarding advisory opinions by this Court in my dissent from *Oklahoma Ass'n of Mun. Attys v. State*, 577 P.2d 1310 (Okl.1978). The reasoning expressed in that dissent is as valid today as it was fifteen years ago.

Today we establish imprudent precedent when we condone the summoning into Court of the President Pro Tempore of the Senate and the Speaker of the House of

---

that the Legislature may delegate to state agencies the power to make rules of a subordinate character to carry out the policy developed by the Legislature. *City of Sands Springs v. Department of Public Welfare*, 608 P.2d 1139, 1144

(Okla.1980). It is noted that the legislative power to define crimes and fix punishments in the area of governmental ethics remains solely with the Legislature. Okla. Const., art. 29, § 6.

Representatives, as representatives of those two constitutional bodies, when the constitutionality of a resolution or statute is in question.

A very fine and learned jurist from Pawnee, Oklahoma, Justice Thurman Hurst wrote in *City of Shawnee v. Taylor*, 191 Okl. 687, 132 P.2d 950 (1943):

"It is well settled that this court 'will not pass upon the constitutionality of an act of the Legislature or any of its provisions until there is presented a proper case in which it is made to appear that the person complaining has been or is about to be denied some right or privilege to which he was lawfully entitled, or is about to be subjected to some of its burdens or penalties.' {Citations Omitted} In other words as a general rule the courts decide questions only when those urging them have an interest to protect and will be injured by the enforcement, or refusal to enforce, the rule or statute involved. *This court does not give advisory opinions, answer hypothetical questions or enter declaratory judgments.*" (E.S.)

The constitutional jurisdictional limitations upon this Court are no different now from what they were in 1943. I would invoke the wisdom of Justice Hurst and deny the Application to Assume Original Jurisdiction and reject the use of "raw judicial power" as advocated by the majority and the concur in result opinions.